UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ENEDEO RODRIGUEZ JR.,

   Plaintiff,

   v.       Case No. 3:18-CV-899 JD

KYLE LERCH, et al.,

   Defendants.

## OPINION AND ORDER

Plaintiff Enedeo Rodriguez is incarcerated and not represented by counsel. He filed an amended complaint under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983 against multiple defendants, claiming that they violated his Fourth and Fourteenth Amendment rights when they investigated and searched his home and business for drug trafficking evidence.

"A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, because Mr. Rodriguez is incarcerated, pursuant to 28 U.S.C. § 1915A, the Court must review the complaint and dismiss it if the action "is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Id*.

**A. Federal Rule of Civil Procedure 15(c)(1)(C)**

The amended complaint contains a number of defendants who were not named in the original complaint. Because Mr. Rodriguez filed his original complaint near the end of the statute of limitations period, substituting or adding new parties now may be foreclosed unless the addition of the new defendants is compatible with Federal Rule of Civil Procedure 15(c)(1)(C). However, the court cannot tell from the existing record whether some of the newly named defendants "received such notice of the action that [they] will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 130 S. Ct. 2485, 2487, 177 L. Ed. 2d 48 (2010) (holding that relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or timeliness in seeking to amend the pleading). As a result, if there are any issues as to whether Mr. Rodriguez's amended claims relate back to the original complaint, they must be raised by the affected defendants. This issue may also arise if Mr. Rodriguez attempts to add additional defendants later as he suggests in his amended complaint. (*See* Am. Compl., DE 136 at 2, 3 [¶¶ 1, 14.]) (" . . . an unknown defendant who threw a flash-bang grenade in the presence of a child, the name should be revealed upon the completion of an unredacted discovery.")).[1]

**B. Fourth Amendment Claims**

**(1)  *ATF Agent Wayne Lessner***

---

[1] Mr. Rodriguez must remain cognizant of *Rodriguez v. McCloughen*, 49 F.4th 1120 (7th Cir. 2022), and *Rodriguez v. McCloughen*, No. 22-1259, 2022 WL 4534787 (7th Cir. Sept. 28, 2022) (unpublished opinion), the two Seventh Circuit cases bearing directly on this case.

2

The details of Mr. Rodriguez's complaint aren't always easy to discern, but it is clear that he is alleging that his constitutional rights were violated when a false search warrant affidavit was presented to a magistrate judge resulting in a subsequent search of his home and adjacent property by various law enforcement officers. As required by § 1915A, the Court will review his claims against each defendant. First in line is Wayne Lessner, an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

According to the amended complaint, in October 2015, the Elkhart County Intelligence and Covert Enforcement Unit ("ICE") began to investigate Jorge Moreida. Lessner was working as an undercover agent and was introduced to Moreida. During his investigation, Lessner drafted several search warrant applications for a United States magistrate judge to obtain search warrants for Mr. Rodriguez's phone and residence. Mr. Rodriguez alleges that the affidavits contained false and misleading statements and omissions which when properly considered nullify any finding of probable cause. In particular, Mr. Rodriguez complains that Lessner intentionally misrepresented that the investigation was a joint federal and state investigation; he lied about the dates of certain events and about what Mr. Rodriguez did on December 12, 2015. Mr. Rodriguez claims that the investigators were conducting shoddy surveillance, so Lessner made up the facts in support of probable cause to search his home. He says Lessner acted with corrupt motive and with intent to harm and destroy him. Mr. Rodriguez believes that, had Lessner not lied, the search warrant application would have contained no probable cause to issue a search warrant.

As a federal agent, Lessner stands on a different footing in this lawsuit than his state counterparts. Section 1983 authorizes lawsuits for deprivation of rights against persons acting under color of state law. But there's no corresponding statute for suing federal officers. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). However, fifty-two years ago, the Supreme Court

recognized an implied cause of action against federal officials who, without a warrant, entered Webster Bivens's apartment, arrested him for alleged drug violations, threatened his family, searched his apartment, and took him for interrogation and booking. *Bivens v. Six Unknown Named Fed. Agents*, 403 U.S. 388 (1971). The Supreme Court found that, under those circumstances, "the Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen." *Id*. at 392. Yet this holding has proven to be limited to only a certain class of cases, and, since *Bivens*, the Supreme Court found only in two other cases an implied cause of action involving other constitutional violations:

> In *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. *Id.*, at 248–249, 99 S.Ct. 2264. And in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment. *See id.*, at 19, 100 S.Ct. 1468. These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.

*Abbasi*, 137 S. Ct. at 1854–55.

"To understand *Bivens* and the two other cases implying a damages remedy under the Constitution, it is necessary to understand the prevailing law when they were decided. In the mid-20th century, the Court followed a different approach to recognizing implied causes of action than it follows now." *Id*. at 1855. Since then, "the [Supreme] Court [has] adopted a far more cautious course before finding implied causes of action." *Id*. In fact, although it had many opportunities, the Supreme Court has declined to provide a *Bivens* remedy in other types of

4

cases. *See, e.g.*, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020) (Fourth and Fifth Amendment suit against border patrol agent in a cross-border shooting); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1863 (2017) (Fourth and Fifth Amendment suit over prison mistreatment against high-ranking officials); *Minneci v. Pollard*, 565 U.S. 118, 131 (2012) (Eighth Amendment suit against prison guards at private prison); *Wilkie v. Robbins*, 551 U.S. 537, 561 (2007) (Fifth Amendment due process suit against Bureau of Land Management officials); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (Eighth Amendment suit against private prison operator); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (Fifth Amendment due process suit against Social Security officials); *United States v. Stanley*, 483 U.S. 669, 685–86 (1987) (Fifth Amendment suit against military officers for violation of due process); *FDIC v. Meyer*, 510 U.S. 471, 486 (1984) (Fifth Amendment due process suit for wrongful termination from federal employment); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (First Amendment suit against federal employer for defamation and retaliatory demotion); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983) (Fifth Amendment race discrimination suit against military officers). This is so because "the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

With this backdrop in mind, the Court must decide whether Mr. Rodriguez's Fourth Amendment claim against Lessner may proceed. There are two primary considerations for evaluating claims under *Bivens*:

> The first question a court must ask is whether the plaintiff's claim presents a new Bivens "context," "i.e., whether the case is different in a meaningful way from previous Bivens cases decided by this Court." If it is, the court must then decide whether there are "special factors counselling hesitation" in allowing the claim to go forward. The focus of that inquiry is "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."

5

*Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 561–62 (7th Cir. 2022) (citations omitted).

There's a disagreement among courts in how to treat *Bivens* claims in the context of false search warrant applications. The Court of Appeals for the Seventh Circuit has observed that "[i]n the wake of *Abbasi*'s new limits on *Bivens* claims, some courts have taken a fresh look at the precedents that have authorized *Bivens* claims in this context of alleged false and misleading warrant applications, choosing instead to limit *Bivens* to cases of warrantless searches and seizures." *Pettigrew*, 38 F.4th 555 at 563 (citing *Annappareddy v. Pascale*, 996 F.3d 120, 135–38 (4th Cir. 2021) (affirming dismissal of plaintiff's *Bivens* action against defendants for falsifying affidavit to obtain search warrant); *Cantú v. Moody*, 933 F.3d 414, 423–24 (5th Cir. 2019) (affirming denial of *Bivens* relief where plaintiff alleged that defendants violated his Fourth Amendment rights by falsifying affidavits that led to his unlawful seizure); *Farah v. Weyker*, 926 F.3d 492, 498–502 (8th Cir. 2019) (reversing denial of motion to dismiss *Bivens* claim where plaintiffs alleged that defendant provided false information and deceived prosecutors and grand jury into instituting criminal proceedings)). "In contrast, other courts (or panels) have taken the view that *Abbasi* does not require them to disregard earlier *Bivens* precedents as long as they were not inconsistent with *Abbasi*." *Pettigrew*, 38 F.4th 555 at 563 (citing *Hicks v. Ferreyra*, 965 F.3d 302, 311–12 (4th Cir. 2020) (noting that before *Abbasi*, courts regularly applied *Bivens* to Fourth Amendment claims like plaintiff's so plaintiff's action was "not an extension of *Bivens* so much as a replay"); *Jacobs v. Alam*, 915 F.3d 1028, 1035–39 (6th Cir. 2019) (explaining that plaintiff's *Bivens* claims based on excessive force, fabrication of

evidence, and other misconduct were "run-of-the-mill challenges . . . that fall well within *Bivens* itself")).

As for the Seventh Circuit, while not deciding the question, it has noted that there remains continuity in how claims related to Fourth Amendment searches are treated:

> In *Abbasi*, the Supreme Court cautioned that any hesitation about extending *Bivens* is 'not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose.' Instead, the Court explained, because Bivens is such "settled law . . . in this common and recurrent sphere of law enforcement,' it should be retained."

*Pettigrew*, 38 F.4th at 564 (citing *Abbasi*, 137 S. Ct. at 1856). The Seventh Circuit is "not persuaded that *Abassi* or *Hernandez* [*v. Mesa*, 140 S. Ct. 735 (2020)] overturned the line of cases recognizing Fourth Amendment *Bivens* claims based on fabricated warrant affidavits and/or grand jury testimony. The Supreme Court previously recognized that a search conducted with a warrant that lacked particularity was equivalent to a warrantless search. *Groh v. Ramirez*, 540 U.S. 551, 558–59, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). Searches conducted with a 'plainly invalid' warrant can still violate the Fourth Amendment. *Id*. at 557, 563." *Pettigrew*, 38 F.4th at 564.

In light of *Pettigrew*, and taking into account Mr. Rodriguez's pro se status in drafting the complaint, the Court finds that he has stated sufficient grounds for his Fourth Amendment claim to proceed against Lessner. The amended complaint alleges that Lessner lied in the search warrant application about his surveillance of Mr. Rodriguez and inserted untrue facts, while omitting facts favorable to Mr. Rodriguez, to create probable cause for the search of Mr. Rodriguez's home. Mr. Rodriguez further alleges that Lessner knew that his affidavit would be used to get a search warrant for Mr. Rodriguez's home and even asked for the assistance from the SWAT team to execute the search, knowing all the while that the search warrant would be

defective. Lessner was also present during the search of the home. Furthermore, according to the amended complaint, Lessner presented the same lies when applying for search warrants for his cell phone. Mr. Rodrigues alleges that the investigators were conducting substandard surveillance, so Lessner made up the facts in support of probable cause. He says Lessner acted with corrupt motive and with intent to harm and destroy him. Mr. Rodriguez believes that, had Lessner not lied, the search warrant application would have lacked probable cause to issue a search warrant.

Mr. Rodriguez has not submitted with his complaint the search warrant applications in question, so the Court cannot determine whether probable cause can be maintained even if the alleged lies are stricken, and the Court must accept his allegations at their face value. "The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. [The Seventh Circuit has] long recognized that a request for a warrant violates the Fourth Amendment if an officer 'knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue.'" *Id*. at 567. Here, Mr. Rodriguez made such allegations against Lessner so his Fourth Amendment claim against him will be allowed to proceed.

2.   *ICE Officer Brian Schroth*

Along with Lessner, Mr. Rodriguez also faults ICE Officer Brian Schroth for the alleged falsehoods in the search warrant applications. Yet, he does not allege that Schroth drafted or otherwise helped write the affidavits. While he mentions Schroth as one of the persons investigating him and interviewing his accomplice, Moreida, he has alleged nothing in relation to Schroth to suggest any wrongdoing relating to the application for a search warrant. Schroth, who is sued under § 1983, is not responsible for the misconduct of others. "Only persons who cause

or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Because the amended complaint does not allege that Schroth was involved in doctoring the search warrant applications, the Court will dismiss Mr. Rodriguez's Fourth Amendment claim against him.

3.  *SWAT Officers: Lt. Steve Spadafora and Sheldon Scott*

Next, Mr. Rodriguez complains that the officers who executed the search during a "no-knock" entry into his home damaged his property and used excessive force against him and his infant daughter. According to the amended complaint, Lt. Steve Spadafora had responsibility for the day-to-day operations of the SWAT Team. He approved the operational plan for searching Mr. Rodriguez's home and was in charge while the SWAT Team was executing the search warrant. He knew that children lived in the house, yet approved the breaking of doors and windows and throwing in the flash-bang grenade.

Sheldon Scott was an Assistant SWAT Team Commander who prepared the operational plan for the SWAT team to conduct the search at Mr. Rodriguez's house. Mr. Rodriguez alleges that Scott was present during the search and was in charge.

While being directed by Lt. Spadafora and Officer Scott, on November 2, 2016, at 6 a.m., the SWAT Team forcefully entered Mr. Rodriguez's home without first knocking or announcing themselves. They broke down the entrance door and a front window and blindly threw in a flash-bang grenade in a room where an infant was sleeping. The grenade hit Mr. Rodriguez in the elbow, injuring him, and landed inches away from the child where it exploded. During the entry, Mr. Rodriguez was struck with a rifle butt, zipped-tied, and arrested without a warrant. The child was left without care until Mr. Rodriguez's mother arrived shortly after. The officers also broke

9

a bathroom window.² In addition to the SWAT Team, Lessner and Elkhart County ICE Unit were present as well. Mr. Rodriguez alleges that there was no history of violence related to the residence, no evidence of any weapons inside, and no other reason for exigency.

Aside from the two commanders, Mr. Rodriguez did not name any of the SWAT Team members who assisted with the entry into and the search of the house. Nor does he say which members of the ICE Unit were involved.

"The common law principle that law enforcement officers knock and announce their presence before executing a search warrant is part of the reasonableness inquiry under the Fourth Amendment. *See United States v. Leonard*, 210 F.3d 376 (7th Cir. 2000) (unpublished opinion) (citing *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995)). "Absent exigent circumstances, law enforcement officers must knock on the entry door of a dwelling and announce their identity and intention before attempting forcible entry." *United States v. Gillaum*, 372 F.3d 848, 854 (7th Cir. 2004) (quotation marks and citation omitted). "Congress codified the 'knock and announce' principle in 18 U.S.C. § 3109, which 'provides the proper framework for analysis' of an entry's reasonableness for both state and federal officers, *United States v. Singer*, 943 F.2d 758, 761 (7th Cir. 1991), and permits forcible entry into a home 'if, after notice of [the police officer's] authority and purpose, he is refused admittance.' When the notice of authority and purpose is 'followed by a pause long enough for someone to answer or come to the door,' the failure to answer the door constitutes a type of refusal of admittance." *Leonard*, 210 F.3d 376 (7th Cir. 2000). "Exigent circumstances exist . . . when a suspect's awareness of the search would increase the danger to police officers or others, or when an officer must act quickly to prevent the

---

² Although the amended complaint states that Lessner knew that the search warrant was invalid, there are no allegations that any of the officers who executed the search warrant knew that it was based on alleged falsities and omissions in the search warrant affidavit.

10

destruction of evidence. Whether such exigent circumstances exist must be viewed from the totality of circumstances known to the officers at the time of the forcible entry." *Gillaum*, 372 F.3d at 855 (cleaned up).

The amended complaint states a Fourth Amendment claim against Lt. Spadafora and Officer Scott. According to the amended complaint, they planned and supervised the no-knock entry even if there was no exigency, making the simultaneous breaking down of a door and windows and blind use of a flash-bang grenade unreasonable. However, insofar as the complaint names as defendants the Elkhart ICE Unit and two SWAT Teams—one from South Bend and the other from Elkhart County—they must be dismissed because they're not suable entities. *Cf. Averhart v. City of Chicago*, 114 F. App'x 246, 247 (7th Cir. 2004) ("We first observe that the Chicago Police Department is not a suable entity separate from the City of Chicago.").

**4.**    ***Detective Stutsman, Randy Mockler, Indiana State Police Officer Aaron Campbell; and ATF Agents Bayne Bennett and Kyle Lerch***

The amended complaint also alleges that, thirty minutes after the entrance to his home was breached, officers of the Elkhart County Sheriff's Department, including officers of the SWAT Team and the Elkhart County ICE Unit, executed a search of Mr. Rodriguez's auto business (R and R Sales, a Sole Proprietorship). Mr. Rodriguez claims that the SWAT Team broke open the door of the business and searched the property without a warrant, causing significant damage in the process. In particular, Mr. Rodriguez singles out Detective Stutsman who was in charge of the search of the business and Randy Mockler who acted as the evidence lab technician. Also, ATF Agents Bayne Bennett and Kyle Lerch and Indiana State Police Officer Aaron Campbell participated in this warrantless search. According to the amended complaint, the five of them significantly damaged Mr. Rodriguez's two cars and other property.

11

The Court finds that Mr. Rodriguez has stated a Fourth Amendment claim against the five officers who searched Mr. Rodriguez's business premises. "[T]he principle that a warrantless search or seizure conducted on private property is presumptively unreasonable applies whether 'the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards,' so long as the claimant had a reasonable expectation of privacy in the premises on which the search or seizure occurred." *Doe v. Heck*, 327 F.3d 492, 511 (7th Cir. 2003) (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–13 (1978)). Since R and R Sales is a sole proprietorship, it is not a legal entity "but merely a name under which the owner, who is the real party in interest, does business." *Jeroski v. Fed. Mine Safety & Health Rev. Comm'n*, 697 F.3d 651, 652 (7th Cir. 2012). The owner here is Mr. Rodriguez and, as such, he has stated a Fourth Amendment claim for the damage to his business property as a result of the alleged warrantless search by Detective Stutsman, Officer Mockler, Officer Campbell, and ATF Agents Lerch and Bennett. The two agents, although federal employees, can be sued here under *Bivens* as discussed above. On the other hand, as explained already, the law enforcement agencies must be dismissed because they are not suable entities.

**5.**     ***City of Goshen Police Department; City of Elkhart Police Department; Elkhart County Sheriff's Department; and City of South Bend Department of Law***

Mr. Rodriguez names as defendants several other entities that aren't suable: City of Goshen Police Department; City of Elkhart Police Department; Elkhart County Sheriff's Department; and City of South Bend Department of Law. *See Martin v. Fort Wayne Police Dept.*, No. 1:09-CV-48, 2010 WL 4876728, at *3 (N.D. Ind. Nov. 23, 2010) (in Indiana, a municipal police department is not a suable entity under § 1983); *Riley v. Lake Cty.*, No. 2:17 CV 368, 2018 WL 3239732, at *3 (N.D. Ind. July 3, 2018) (collecting cases finding that under

Indiana law, sheriff's departments are not suable entities). As a result, they will be dismissed from this case.

6. ***Elkhart County Prosecutor Curtis Hill; Commander John Mohan; and Field Commanders Andrew Whitmeyer and Josh Owens***

The amended complaint also names former Elkhart County Prosecutor Curtis Hill. It states that Hill created the Elkhart County ICE Unit and selected its leadership. John Mohan held the position of the Unit Commander. Immediately under Mohan were ICE Field Commanders Andrew Whitmeyer and Josh Owens. Whitmeyer helped direct, review and oversee Mr. Rodriguez's investigation as a commander of the ICE Unit and Owens was in charge of the operational aspects of the investigation. Owens also was in charge of coordinating the operations with other law enforcement agencies. Yet apart from naming Hill, Mohan, Whitmeyer, and Owens as defendants, the amended complaint does not state what wrongs they allegedly committed against Mr. Rodriguez. As already noted, the doctrine of respondeat superior, under which a supervisor can be held liable for a subordinate's actions, does not apply to § 1983 cases, *see Adams v. Pate*, 445 F.2d 105, 107 (7th Cir. 1971), so these defendants cannot be found liable just because they supervised the ICE unit. Instead, as pointed out in the Court's previous orders and by the Court of Appeals, to proceed against them, Mr. Rodriguez had to allege that they were personally involved in the wrongdoing. *See e.g.*, *Rodriguez v. McCloughen*, No. 22-1259, 2022 WL 4534787, at *3 (7th Cir. Sept. 28, 2022) (factual allegations must plausibly support entitlement to relief). Given that no such allegations are present in the amended complaint, these four defendants must be dismissed.

7. ***Elkhart County and Any Claims in Officers Official Capacities***

Next, the Court considers the last defendant: Elkhart County. The amended complaint does not state what role, if any, Elkhart County played in relation to the execution of the search warrant and the alleged warrantless search of Mr. Rodriguez's business. Here, too, there's no respondeat superior liability under § 1983. "Governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). "The official policy requirement for liability under § 1983 is to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (quotation marks and citation omitted). Without any inkling that Elkhart County maintained an official policy or custom or that any of its final policy decision makers engaged in the alleged wrongdoing, Elkhart County must be dismissed from this lawsuit.

Finally, to the extent that Mr. Rodriguez intended to sue any of the defendants in their official capacities which would amount to suing municipalities for which they work, *see id.* (an official capacity claim against a person is really a claim against the municipal entity that is employing that person), they, too, must be dismissed because the amended complaint alleges no offending official custom or policy by any of the municipalities.

## C. Fourteenth Amendment Claims

In the amended complaint, Mr. Rodriguez states that his claims are based on a violation of his Fourth and Fourteenth Amendment rights. Having addressed the Fourth Amendment claims, the Court now turns to the Fourteenth Amendment. The Fourteenth Amendment provides, in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person

of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

Mr. Rodriguez's claims stem from what he believes were unlawful entry and search of his house and unlawful search of his business premises, that is, conduct directly prohibited by the Fourth Amendment. "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994) (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because Mr. Rodriguez's claims fall squarely within the protection of the Fourth Amendment, they need only be considered in that context, and there's no need for a separate consideration of the Fourteenth Amendment. *See Ledford v. Rutledge*, No. 1:17-CV-438-TLS, 2018 WL 4216820, at *11 (N.D. Ind. Sept. 4, 2018) ("The Plaintiff's claims 'fall[ ] clearly within the ambit of those activities regulated by the Fourth Amendment.' Therefore, the proper standard for the Court to consider this case is that provided by the Fourth Amendment, which the Court has already done and will not reiterate here."). Since, at best, Mr. Rodriguez's Fourteenth Amendment claims are duplicative of his Fourth Amendment claims, the Court will dismiss them.

**D. Conclusion**

For these reasons, the Court:

 (1) **GRANTS** Plaintiff Enedeo Rodriguez leave to proceed against—

    a. Wayne Lessner in his individual capacity for compensatory and punitive damages for his claim that Lessner falsified the search warrant application and participated in the search of his home in violation of the Fourth Amendment;

b. Lt. Steve Spadafora and Officer Sheldon Scott in their individual capacities for compensatory and punitive damages for his claim that they participated in the search of his home and in his arrest in violation of the Fourth Amendment;

c. Detective Stutsman, Randy Mockler, Indiana State Police Officer Aaron Campbell; and ATF Agents Bayne Bennett and Kyle Lerch in their individual capacities for compensatory and punitive damages for his claim that they conducted a warrantless search of Mr. Rodriguez's business in violation of the Fourth Amendment;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Defendants ICE Officer Brian Schroth; Elkhart County Prosecutor Curtis Hill; Commander John Mohan; and Field Commanders Andrew Whitmeyer and Josh Owens; South Bend Police Department SWAT Team; Elkhart County SWAT Team Tactical Unit; City of Goshen Police Department; City of Elkhart Police Department; Elkhart County Sheriff's Department; City of South Bend Department of Law; and Elkhart County;

(4) **DIRECTS** the Clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) each Defendants named in paragraph (1) of this section,[3] with a copy of this order and the complaint (ECF 136);

(5) ORDERS, under 42 U.S.C. § 1997e(g)(2), each Defendants named in paragraph (1) of this section to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Mr. Rodriguez has been granted leave to proceed in this screening order.

---

[3] The defendants' addresses can be found in the second amended complaint. (*See* DE 136 at 1–3.)

SO ORDERED.

ENTERED: April 6, 2023

                /s/ JON E. DEGUILIO
              Chief Judge
              United States District Court