**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| ENEDEO RODRIGUEZ, JR., | |
| Plaintiff, | |
| v. | CAUSE NO.: 3:18-CV-899-TLS-JEM |
| BAYNE BENNETT, AARON CAMPBELL, KYLE LERCH, RANDY MOCKLER, DETECTIVE STUTSMAN, SHELDON B. SCOTT, STEVE SPADAFORA, and WAYNE LESSNER, | |
| Defendants. | |

**OPINION AND ORDER**

Enedeo Rodriguez, Jr., a prisoner without a lawyer, commenced the instant action on November 5, 2018, by filing a Complaint [ECF No. 2] under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983 against multiple local and federal law enforcement defendants, claiming violations of his Fourth and Fourteenth Amendment rights for providing false information to a federal magistrate judge who issued the warrant to search his residence for drug trafficking evidence, searching his business without a warrant, and executing the searches in an unreasonable manner. The evidence obtained from the residential search ultimately led to the Plaintiff's arrest and felony convictions in Indiana state court for dealing in methamphetamine and corrupt business influence.

On January 22, 2020, in accordance with 28 U.S.C. § 1915A, this Court screened the Complaint and dismissed the federal law enforcement Defendants (the agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)) among other Defendants and authorized the Plaintiff to proceed against Defendant Nick McCloughen (an Indiana state law enforcement defendant) in his individual capacity for money damages for conducting an unreasonable search

of the Plaintiff's home on November 2, 2016, in violation of the Fourth Amendment. Jan. 22, 2020 Op. & Ord., ECF No. 21. The case proceeded through discovery and resulted in summary judgment for Defendant McCloughen. Feb. 8, 2022 Op. & Ord., ECF No. 106.

The Plaintiff appealed, and the Seventh Circuit Court of Appeals issued two decisions, affirming summary judgment as to Defendant McCloughen but otherwise vacating the judgment and remanding the proceedings. *See Rodriguez v. McCloughen*, 49 F.4th 1120 (7th Cir. 2022); *Rodriguez v. McCloughen*, No. 22-1259, 2022 WL 4534787 (7th Cir. Sept. 28, 2022). The Seventh Circuit reversed the dismissal of the Plaintiff's Fourth Amendment claims against several federal, state, and county officers involved in a joint federal and state investigation into the Plaintiff for violations of narcotics laws. *See Rodriguez*, 2022 WL 4534787, at *3–4.

In accordance with the Seventh Circuit's decisions, on December 12, 2022, this Court granted the Plaintiff leave to amend his complaint. Dec. 12, 2022 Op. & Ord., ECF No. 135. And the Plaintiff filed an Amended Complaint [ECF No. 136] on January 6, 2023.

On April 6, 2023, pursuant to 28 U.S.C. § 1915A, the Court screened the Amended Complaint and granted the Plaintiff leave to proceed against: (1) Defendant Wayne Lessner (ATF agent) in his individual capacity for compensatory and punitive damages for his claim that Lessner falsified the search warrant application and participated in the search of his home in violation of the Fourth Amendment; (2) Defendants Lt. Steve Spadafora and Officer Sheldon Scott in their individual capacities for compensatory and punitive damages for his claim that they participated in the search of his home and in his arrest in violation of the Fourth Amendment; and (3) Defendants Detective Stutsman, Randy Mockler, Indiana State Police Officer Aaron Campbell, and ATF Agents Bayne Bennett and Kyle Lerch in their individual capacities for compensatory and punitive damages for his claim that they conducted a warrantless search of his business in violation of the Fourth Amendment. Apr. 6, 2023 Op. & Ord., ECF No. 141.

This matter is now before the Court on: (1) a Joint Motion to Dismiss [ECF No. 187] filed by Defendants Bayne Bennett, Kyle Lerch, and Wayne Lessner; (2) Plaintiff's Motion to Object to Magistrate's Opinion and Order of Dkt. 194 [ECF No. 200]; (3) Plaintiff's first Verified Motion to Add Bayne Bennett as the Unknown Defendant Who Threw a Flash Bang Device in the Presence of a Child [ECF No. 291]; and (4) Plaintiff's second Verified Motion to Add Bayne Bennett as the Unknown Defendant Who Threw a Flash Bang Device in the Presence of a Child [ECF No. 329]. These are briefed and ripe for ruling.

## LIFTING THE STAY OF PROCEEDINGS

On May 20, 2024, this case was stayed and statistically closed for the Court to fully review and justly rule on what was then sixteen pending motions. May 20, 2024 Ord., ECF No. 376. On January 30, 2025, the case was reassigned to the undersigned. Jan. 30, 2025 Ord., ECF No. 394. The Court has fully reviewed this case. Accordingly, the Court hereby LIFTS the stay of these proceedings.

To the extent the Plaintiff and non-parties Maria Rodriguez and R.R. filed various motions while this case was stayed, *see* ECF Nos. 401, 404, 405, 409, 410, 411, 412, 414, 416, 423, the Court will set deadlines in the Conclusion of this Opinion and Order for the Defendants to file a response, if any, to each of the motions and for the Plaintiff, Maria Rodriguez, and R.R. to file a reply, if any, in support of the motions they each filed.

## REVIEW OF DECISION BY MAGISTRATE JUDGE JOHN E. MARTIN

Pursuant to Civil Rule of Procedure 72(a), a party may file an objection to a magistrate judge's decision on a non-dispositive pretrial matter within fourteen days. Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997); *see also* 28 U.S.C. § 636(b)(1)(A). "The clear error standard

3

means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks*, 126 F.3d at 943.

The issue before this Court pertains to whether Magistrate Judge John E. Martin's Order [ECF No. 194] on the Plaintiff's Verified Motion to Strike Defendant's Affirmative Defenses [ECF No. 167], second Verified Motion to Strike Defendant's Affirmative Defenses [ECF No. 169], and third Verified Motion to Strike Defendant's Affirmative Defenses [ECF No. 184] was clearly erroneous or contrary to law. The Plaintiff argues that Judge Martin erred by: (1) allowing the Defendants to amend their defenses; (2) not addressing the arguments about the affirmative defenses that the Defendants withdrew; and (3) allowing the Defendants to replead affirmative defenses that were withdrawn, specifically Affirmative Defense 6 by Defendant Spadafora.

As to the first two arguments, the Plaintiff provides no explanation for how allowing the Defendants to amend their defenses or not addressing the arguments about the affirmative defenses that the Defendants withdrew amounts to a clear error or is contrary to law. Nor does the Plaintiff cite any supporting legal authority. There is no clear error in allowing the Defendants to amend their defenses or in not addressing the affirmative defenses that the Defendants withdrew.

As to the third argument about Defendant Spadafora's Affirmative Defense 6, the Plaintiff misconstrues Judge Martin's decision. Judge Martin stated, "Spadafora and Scott withdrew their Affirmative Defenses 3, the absolute and sovereign immunity claims asserted in 6, and 10." Sept. 7, 2023 Op. & Ord. 4, ECF No. 194. He also stated, "Spadafora and Scott's Affirmative Defense 6 asserts qualified, absolute, and/or sovereign immunity. Spadafora and Scott withdrew their defenses of absolute and sovereign immunity." *Id*. at 6. He concluded that the "Defendants have sufficiently pleaded an affirmative defense of qualified immunity." *Id*.

Judge Martin ultimately held, "The Court grants Defendants Spadafora and Scott leave to file amended Affirmative Defenses solely for the purpose of repleading affirmative defenses 5, 6, 7, 11, 12, 13, 14, and 15 and amending affirmative defenses 2, 4, 8, and 9 . . . ." *Id.* at 1. Because Spadafora did not withdraw his Affirmative Defense 6 as to qualified immunity and Judge Martin determined that he sufficiently pled qualified immunity, there is no clear error in Judge Martin granting Defendant Spadafora leave to replead Affirmative Defense 6.

Accordingly, the Court overrules the Plaintiff's objections. To the extent the Plaintiff requests that "a Chief Judge could step in and oversee previous decisions made by the Magistrate," the Court denies the request because there is no pertinent legal authority that allows the Court to accommodate such a request. The pertinent legal authorities, Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b), provide that any objection to the merits of Judge Martin's rulings must be filed within fourteen days of the ruling, which the Plaintiff has done here.

## MOTION TO DISMISS

Defendant Wayne Lessner seeks to dismiss the claims against him for falsifying the search warrant application and participating in the search of the Plaintiff's home in violation of the Fourth Amendment, and Defendants Bennett and Lerch seek to dismiss the claim against them for a warrantless search of the Plaintiff's business in violation of the Fourth Amendment.

### A.     Legal Standard

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the

complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c); *Papasan v. Allain*, 478 U.S. 265, 268 n. 1 (1986); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the October 31, 2016 affidavit that Defendant Lessner filed with an application for a warrant for the search of the Plaintiff's home. The October 31, 2016 affidavit is critical and referred to in the Amended Complaint and was attached by the parties to their briefing on the instant Motion to Dismiss, *see* Pl. Ex. 16, ECF No. 229-1, pp. 83–103; Def. Att. 1, ECF No. 188-1.

The Court also bases this ruling on the September 1, 2016 affidavit that Defendant Lessner filed with an application for a search warrant for information about the location of the cellular telephone assigned call number (260) 431-9552, which is relied on in the Amended Complaint to support the Plaintiff's allegation that Defendant Lessner fabricated the information from the first CS and is attached to the Plaintiff's brief in response to the Defendants' Joint

Motion to Dismiss, *see* Pl. Ex. 5, ECF No. 229-1, pp. 26–42. To the extent the Plaintiff also references his Exhibit 4 in the context of his allegation that Defendant Lessner fabricated the information in the affidavit from the first CS, Exhibit 4 appears to be the same affidavit as Exhibit 5 except it is dated August 29, 2016, is not signed by Defendant Lessner or the federal magistrate judge, and does not appear to have been filed in that case. *See* Pl. Ex. 4, ECF No. 229-1, pp. 10–25. Because the Plaintiff does not allege a difference between Exhibit 4 and Exhibit 5, Exhibit 4 was not referenced in the Amended Complaint, and Exhibit 4 is not public information, the Court does not consider Exhibit 4 in ruling on the Defendants' Joint Motion to Dismiss.

Additionally, "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky*, 675 F.3d at 745 n.1 (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004); *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992); *Roe v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1007 (S.D. Ind. 2007)). However, here the Plaintiff has attached additional documents to his brief in response to the Defendants' Joint Motion to Dismiss that do not support his factual allegations raised in the Amended Complaint and his response brief. *See* ECF No. 229-1. Thus, the Court excludes those documents (other than Pl. Exs. 5 and 16, as discussed above) and, instead, relies on the allegations in the Amended Complaint and the arguments in the Plaintiff's response brief. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("Under Rule 12(b), when this happens the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule, or exclude the documents attached to the motion to dismiss and continue under Rule 12.").

## B. Fourth Amendment Violation Claim Against Defendant Lessner—False Affidavit

Defendant Lessner argues that the Plaintiff's Fourth Amendment claim against him based on his purported submission of a false affidavit should be dismissed. Because Defendant Lessner

is a federal agent, the Plaintiff's claim arises under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), rather than under 42 U.S.C. § 1983. *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003) ("[A]n action brought pursuant to § 1983 cannot lie against federal officers acting under color of federal law[.]").

Specifically, in *Bivens*, the Supreme Court recognized a cause of action where the plaintiff's complaint was based on

> an arrest and search carried out on the morning of November 26, 1965. [Plaintiff's] complaint alleged that on that day [defendants], agents of the Federal Bureau of Narcotics acting under claim of federal authority, entered his apartment and arrested him for alleged narcotics violations. The agents manacled [plaintiff] in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, [plaintiff] was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.

> On July 7, 1967, [plaintiff] brought suit in Federal District Court. In addition to the allegations above, his complaint asserted that the arrest and search were effected without a warrant, and that unreasonable force was employed in making the arrest; fairly read, it alleges as well that the arrest was made without probable cause.

403 U.S. at 389. The Supreme Court held: "Having concluded that [plaintiff's] complaint states a cause of action under the Fourth Amendment, . . . [plaintiff] is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment." *Id*. at 397.

While circuit and district courts have applied *Bivens* to claims against federal officials for constitutional violations broadly, the Supreme Court has taken a narrower approach:

> Since *Bivens* was decided in 1971, circuit and district courts have recognized *Bivens* as a foundation for damages claims against individual federal officials for a wide range of alleged constitutional violations. The case law governing those claims has often paralleled the law under 42 U.S.C. § 1983 for similar claims against state and local government officials, including defenses of absolute and qualified immunity and standards for available damages.

> In recent years, however, the Supreme Court has been adopting a narrower view of *Bivens* than has prevailed in the lower courts.

*Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 561 (7th Cir. 2022).

In fact, the Supreme Court has recognized only three types of *Bivens* claims: (1) a search and arrest of a private citizen without probable cause in violation of the Fourth Amendment in *Bivens*; (2) a claim against a federal employer for gender discrimination under the Due Process Clause of the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228 (1979); and (3) a prisoner's claim of deliberate indifference to medical needs in violation of the Eighth Amendment in *Carlson v. Green*, 446 U.S. 14 (1980). *See Greenpoint*, 38 F.4th at 562.

But, in recent years, the Supreme Court has questioned the continued viability of these claims and has strongly cautioned federal courts against recognizing new types of claims. *See Egbert v. Boule*, 596 U.S. 482, 502 (2022) ("[I]f we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution."); *Hernandez v. Mesa*, 589 U.S. 93, 101–02 (2020) ("[F]or almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*."); *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) ("[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity." (citation omitted)). Under the current guidance from the Supreme Court, courts must ask if the case presents a new *Bivens* context and, if it does, whether special factors counsel hesitation in extending *Bivens*. "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar*, 582 U.S. at 139.

In this case, Defendant Lessner argues that the dismissal of the Plaintiff's Fourth Amendment claim alleging that he submitted a false affidavit in support of the search warrant for the Plaintiff's home "is proper because there is no implied cause of action available under *Bivens* for claims of this type." Def. Br. 7, ECF No. 188. He asserts:

> The Seventh Circuit's decision in *Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555 (7th Cir. 2022), does not change this conclusion. There, the

Seventh Circuit reviewed a Wisconsin District Court judge's decision, which had concluded that allegations that a federal agent knowingly and intentionally made false statements in the affidavit filed in support of a search warrant presented a new *Bivens* context and therefore could not proceed. *Id.* at 560; *see Greenpoint Tactical Income Fund LLC, et al v. Alan Pettigrew, et al*, No. 21-1411, 2021 WL 461560 (Feb. 9, 2021 E.D. Wis.). The court ultimately affirmed the judgment on the grounds that the officers were entitled to qualified immunity and avoided ruling on the *Bivens* question at all.

*Id.* 12–13.

In *Greenpoint*, the Seventh Circuit noted, "In the wake of *Abbasi's* new limits on *Bivens* claims, some courts have taken a fresh look at the precedents that have authorized *Bivens* claims in this context of alleged false and misleading warrant applications, choosing instead to limit *Bivens* to cases of warrantless searches and seizures." 38 F.4th at 563 (citing cases). The Seventh Circuit also acknowledged that, on the other hand, "other courts (or panels) have taken the view that *Abbasi* does not require them to disregard earlier *Bivens* precedents as long as they were not inconsistent with *Abbasi*." *Id.* (citing cases). As to the facts before the Seventh Circuit in *Greenpoint*, that court explained:

Plaintiffs allege here the sort of Fourth Amendment violation familiar to federal courts and close to the heart of *Bivens*. As a result, we are not persuaded that *Abbasi* or *Hernández* overturned the line of cases recognizing Fourth Amendment *Bivens* claims based on fabricated warrant affidavits and/or grand jury testimony. The Supreme Court previously recognized that a search conducted with a warrant that lacked particularity was equivalent to a warrantless search. . . .

Also, plaintiffs' allegations are similar to the cases cited above applying *Bivens* as a remedy against federal actors who procured warrants based on false and misleading affidavits. Adjudication of plaintiffs' accusations here does not require a novel intrusion into law enforcement operations. Such an inquiry is common in criminal cases where an accused defendant seeks to suppress evidence because statements in an affidavit supporting a warrant were deliberately or recklessly false, and in § 1983 actions against state and local law enforcement officials.

*Id.* at 564–65.

However, the *Greenpoint* court ultimately decided to dismiss the case against the federal agent on the issue of qualified immunity "without wrestling to the ground the effects of *Abbasi*."

10

*Id*. at 565. Thus, other than in dicta in *Greenpoint*, the Seventh Circuit has not addressed Defendant Lessner's argument that there is no cause of action for a Fourth Amendment violation claim based on an allegation that the officer submitted a false affidavit with a search warrant application. *See Rodriguez*, 2022 WL 4534787, at *2 ("But since *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), limited the use of this theory, we have kept open the question whether federal employees may be sued under *Bivens* for deliberately misleading a judge to obtain a warrant." (citing *Greenpoint*, 38 F.4th at 563–64)). Therefore, as in *Greenpoint*, this Court will decide the issue of the dismissal of the Fourth Amendment violation claim against Defendant Lessner on the ground of qualified immunity, assuming for the purposes of the analysis below, but not deciding, that the Plaintiff's claim may go forward under *Bivens*.

As in *Greenpoint*, the next argument that Defendant Lessner presents in support of dismissing the Plaintiff's Fourth Amendment violation claim against him—for the submission of a false affidavit with the warrant application for the search of the Plaintiff's home—is that he is entitled to qualified immunity. The Court agrees.

"Qualified immunity protects an officer from liability if a reasonable officer could have believed that the action taken was lawful, in light of clearly established law and the information the officer possessed at the time." *Phillips v. Cmty. Ins.*, 678 F.3d 513, 527–28 (7th Cir. 2012) (citation omitted). "When evaluating a defense of qualified immunity, courts must consider (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Greenpoint*, 38 F.4th at 567 (cleaned up).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is clearly established that a warrant request violates the Fourth Amendment if the

requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1061 (7th Cir. 2018) (cleaned up). It is further clearly established that "[t]he Fourth Amendment is [] violated when an officer 'intentionally or recklessly withhold[s] material information from a warrant application.'" *Greenpoint*, 38 F.4th at 567–68 (quoting *Whitlock v. Brown*, 596 F.3d 406, 408 (7th Cir. 2010)). "When evaluating whether an officer's alleged lies and omissions are material to the probable cause determination, [the courts] eliminate the alleged false statements, incorporate any allegedly omitted facts, and then evaluate whether the resulting 'hypothetical' affidavit would establish probable cause." *Id.* at 568. This means that "[o]nly material omissions [or false statements]— that is, those that would affect the probable cause determination—are relevant." *United States v. Maxwell*, — F.4th —, —, No. 23-2910, 2025 WL 1943837, at *5 (7th Cir. July 16, 2025). And if an omission or false statement is immaterial, then "there [is] no Fourth Amendment violation." *Hart v. Mannina*, 798 F.3d 578, 592 (7th Cir. 2015).

In this case, the Plaintiff alleges that Defendant Lessner submitted a false affidavit on October 31, 2016, with the application for a warrant for the search of the Plaintiff's home. *See* Pl. Ex. 16, ECF No. 229-1, pp. 83–103; Def. Att. 1, ECF No. 188-1. In the screening order, the Court explained, "[The Plaintiff] has not submitted with his complaint the search warrant applications in question, so the Court cannot determine whether probable cause can be maintained even if the alleged lies are stricken, and the Court must accept his allegations at their face value." Apr. 6, 2023 Op. & Ord. 8, ECF No. 141. Later, Defendant Lessner and the Plaintiff attached the affidavit to their briefing on the instant Motion to Dismiss.

As to materiality, Defendant Lessner argues:

> Even if all of the allegedly false information is stricken and alleged material omissions included, there were sufficient facts to establish probable cause. The affidavit sets forth the basis for concluding that the residence in question was Plaintiff's. [Def. Att. 1] at 10, ¶¶ 7–8[, ECF No. 188-1]. A confidential source was debriefed and provided information indicating that Plaintiff was supplying multiple persons with methamphetamine. *Id*. at 11–12, ¶¶ 9–11. It describes Plaintiff's activities on August 23, 2016, before and after an arranged methamphetamine purchase between Lessner and Plaintiff's associate (*id*. at 14–17, ¶¶ 19–29); describes Plaintiff's activities on September 10, 2016 (*id*. at 17, ¶¶ 30–32); and describes Plaintiff's activities on October 28, 2016 before and after another controlled meth[amph]etamine purchase by Lessner from Plaintiff's associate (*id*. at 18–23, ¶¶ 33–56).

Def. Br. 21, ECF No. 188. In his brief in response to the Defendants' motion to dismiss, the Plaintiff attempts to provide reasons why some of the purported lies and omissions in Defendant Lessner's affidavit are material to the probable cause determination; the Court addresses each purported reason in turn.

1.    *Basis for Identifying the Plaintiff's Home Address*

The affidavit explained that the location to be searched was the premises at 71395 County Road 25, New Paris, Indiana 46553. Pl. Ex. 16, ¶ 3, ECF No. 229-1, p. 27; Def. Att. 1, ¶ 3, ECF No. 188-1. Defendant Lessner asserted that he, other Special Agents with the ATF, and law enforcement officers with the Elkhart County Interdiction and Covert Enforcement Unit (EC-ICE) had observed the Plaintiff at that location. *Id*. ¶ 6. Additionally, a federal search warrant for global positioning (GPS) data and cellular tower information executed on a phone known to be possessed by the Plaintiff with the phone number (260) 431-9552 confirmed that the Plaintiff stays at the addresses to be searched. *Id*. ¶ 7. The Plaintiff was on supervised release with the South Bend, Indiana, United States Federal Probation Service for a prior narcotics felony, and the office confirmed that the address to be searched is the Plaintiff's primary residence of record. *Id*. ¶ 8.

The Plaintiff does not raise an allegation of a false or omitted statement related to these statements about the Plaintiff's address in Defendant Lessner's affidavit. Thus, the Court need not address them.

2.    *Confidential Sources*

Defendant Lessner's affidavit also included statements from a first confidential source (CS) and a second CS. According to the affidavit, as to the first CS, Defendant Lessner was aware of a debriefing of an EC-ICE documented CS by EC-ICE investigators that occurred in 2016 about the Plaintiff and alleged narcotics trafficking. *Id.* ¶ 9. Specifically, during the debrief, the CS referenced a person whom the CS knew as Casper advising that Casper drives a black Dodge Challenger and a white Yukon Denali and owns R&R Auto Sales in Elkhart, Indiana. *Id.* The affidavit noted that Defendant Lessner knew through the ongoing investigation into the Plaintiff that Casper was the Plaintiff and that he also knew the Plaintiff to previously have a state of Indiana license plate that read CASPER. *Id.*

The affidavit reported that the first CS stated that the Plaintiff supplies multiple persons with methamphetamine, sells an ounce for $250.00, receives methamphetamine from Mexico that comes into the United States in liquid form, had possessed and sold green colored methamphetamine at one time, and maintains significant quantities of U.S. currency at his New Paris, Indiana residence. *Id.* ¶¶ 9–10. The affidavit reported that the CS also stated that the CS had taken a Hispanic male associate to obtain methamphetamine from the Plaintiff at R&R Auto Sales. *Id.* ¶ 10. The affidavit noted that Defendant Lessner knew that R&R Auto is recorded with the Indiana Secretary of State as R N R Auto Sales Inc., business ID: 2016032200103, and the incorporator of the business is listed as the Plaintiff. *Id.*

As to the second CS, the affidavit noted that Defendant Lessner was aware of an additional debriefing of an EC-ICE documented CS by EC-ICE investigators that occurred on

June 13, 2016, about the Plaintiff and his alleged relation to narcotics trafficking. *Id*. ¶ 11. According to the affidavit, the CS explained to EC-ICE Investigators that a close acquaintance was working at a business located at the corner of Sterling Avenue and East Hively Avenue in Elkhart, Indiana, called R&R Auto Sale and that the owners were the Plaintiff and Maria Rodriguez. *Id*. The CS also explained that the Plaintiff was arrested in 2007 for trafficking 1,000 pounds of marijuana from Texas to Indiana and was prosecuted and sentenced federally, was on parole, had opened a used car lot, and was trafficking narcotics in the vehicles associated with the business. *Id*.

The affidavit reported that the second CS stated that Maria Rodriguez told the acquaintance that she gets high and was bringing a truck back from Tennessee and Massachusetts. *Id*. The affidavit also reported that the CS stated that the acquaintance informed them that when the vehicles get back to R&R Auto, "they" immediately start removing the dashboards and consoles from the vehicles and that the acquaintance has seen them removing thousands of dollars in cash from behind a stereo in the vehicle. *Id*.

To allege a plausible claim for a Fourth Amendment violation against an officer based on his purported submission of a false affidavit with inaccurate or false information from a confidential source (CS), it is not enough for a plaintiff to plausibly allege that a CS lied or provided inaccurate information to the officer taking the CS's statement and that the officer that submitted the affidavit then included those lies or inaccuracies in the affidavit. *See United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994). Instead, a plaintiff must also plausibly allege that the officer submitting the affidavit perjured himself or acted recklessly because he seriously doubted or had obvious reason to doubt the truth or accuracy of the information from the CS. *See United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (citations omitted). Of course, the plaintiff must also plausibly allege that, when the purported inaccurate or false information from

the CS is deleted from the affidavit, probable cause would not be established. *See Greenpoint*, 38 F.4th at 568. Thus, it is necessary, but not sufficient, for a plaintiff to plausibly allege an inaccuracy in the information that an officer included in an affidavit from a CS. *See id.*

> For example, in *Johnson*:
>
> On October 8, 2007, a confidential informant told Officer Chad Batterham of the Peoria, Illinois, Police Department that Duricco Johnson was selling drugs from a tan, two-story apartment located at 1819 North Lehman Road, # 16. The informant described Johnson as a black male in his late twenties, approximately 5'8" tall and 225 pounds with short black hair. The informant claimed to have been in the apartment at least three times in the past thirty days, most recently within seventy-two hours, and stated that Johnson regularly sold crack from that address. On each occasion, the informant saw an off-white, rock-like substance in Johnson's possession. The informant corroborated his description of Johnson by identifying him from a six-photograph spread.
>
> The next day, Officer Batterham appeared in court and signed a complaint detailing this information. He also stated that the same informant had previously provided police with reliable information that had led to the execution of twenty-three search warrants, forty-four arrests, and the seizure of large quantities of drugs and firearms. Finally, Batterham explained that he had checked Johnson's criminal record, which revealed six prior drug arrests.
>
> Based on Batterham's complaint, police received a search warrant for the apartment, which they executed on October 10. In a kitchen cabinet they found two plastic bags containing 7.9 grams of crack, two loaded handguns, and a box of ammunition. Police also found Johnson on the second floor of the apartment and took him into custody.
>
> . . .
>
> Johnson argues that Officer Batterham's complaint contained false statements, which he made intentionally or with reckless disregard for the truth. Specifically, Johnson claims that the informant's allegations were false because no one other than Johnson, Brown, and their young children had been in the apartment in the thirty days before the warrant issued. Johnson also notes that the informant inaccurately described both him and the premises: Johnson was sixty-nine pounds heavier than the informant described, and the apartment was pink and grey rather than tan.

580 F.3d at 668–69, 670. The court found that Johnson's identification of these three inaccuracies was necessary but not sufficient to establish his assertion that Officer Batterham

included "false statements, which he made intentionally or with reckless disregard for the truth" because Johnson did not offer evidence that Officer Batterham had reason to question the accuracy of the information. *Id*. at 670.[1]

In this case, as to the Plaintiff's allegation about false information that a CS provided to Defendant Lessner and that Defendant Lessner included in the affidavit, Defendant Lessner argues that "[the Plaintiff] does not allege that statements in the affidavit regarding that source are false or misrepresented." Def. Br. 21, ECF No. 188. In response, the Plaintiff contends that the fact that the CSs "never explained how they knew about the information they provided or Plaintiff's activities . . . is material because . . . it is known that the Confidential Sources here, were not established to be reliable, credible nor any of their criminal history, or age was ever

---

[1] The Court also considers a case cited by the Plaintiff—*Jacobs v. City of Chicago*, 215 F.3d 758, 768 (7th Cir. 2000). *Jacobs* involved a "warrant . . . [that] authorized the search of a single-family residence located at 15138 Lincoln Avenue in Harvey, Illinois," *id*. at 768, where the information on that address came from a confidential informant, *id*. at 764. However, "the building located at [that] address [was] a multi-unit building consisting of three separate residential apartments." *Id*. at 768. As a result, the *Jacobs* court found that "on its face, the warrant [did] not describe the place to be searched with particularity." *Id*. That court nevertheless held "that although the warrant turned out to be overbroad because it did not describe with particularity the place to be searched and encompassed a separate dwelling unit, the plaintiffs' apartment, for which there was no probable cause to authorize a search, it was valid at the time it was issued based on the information the officers presented to the magistrate." *Id*. In so holding, the court noted that "[t]he plaintiffs [did] not allege that the officers seeking the warrant concealed information from the issuing magistrate that they were under a duty to disclose." *Id*.

The *Jacobs* court explained, in footnote 4, cited by the Plaintiff, that "[f]rom the allegations in the complaint, it appears that simple investigation procedures, such as contacting the gas, electric, or telephone company, would have revealed that the residence at 15138 Lincoln Avenue is a multi-unit apartment building" and noted the obligation of officers to take reasonable steps to confirm information from a confidential informant. *Id*. at 768 n.4. Thus, an additional allegation that the officer failed to verify the description of the address that the confidential informant provided would correspond with the required allegation of the officer's mental state, which would be recklessness. *See United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984) ("Appellant also argues that if an informant existed and gave police false information, Detective Smith included 'reckless' falsifications in the affidavit because he did not verify the accuracy of the informant's statements."); *Johnson*, 580 F.3d at 670. However, an allegation that an officer failed to verify the description of the address without the allegation that the confidential informant provided inaccurate information about the address would not suffice to plausibly allege a claim for a Fourth Amendment violation based on an officer's submission of a false affidavit because there would be no requisite allegation of false or inaccurate information from the CS included in the affidavit. *See Johnson*, 580 F.3d at 670.

presented." Pl. Resp. Br. 19, ECF No. 229. However, this contention does not plausibly allege that Defendant Lessner included inaccurate information or a lie from a CS in his affidavit. Instead, it makes an assertion about what the CS did not explain, which is apparent from the information from the CS contained in Defendant Lessner's affidavit that the federal magistrate judge had before him for the probable cause determination.

To the extent the Plaintiff meant to also assert that the CSs' ages, criminal history, and motive were omitted from the affidavit, the Plaintiff does not plausibly allege that Defendant Lessner knew or should have known the CSs' age or motive at the time of the affidavit nor does the Plaintiff identify the criminal histories that should have been included. Also, the Plaintiff does not provide a reason why including the CSs' age, criminal history, or motive would have a made a difference in the federal magistrate judge's decision to issue the warrant in light of the other information that Defendant Lessner included in the affidavit. Thus, these assertions are insufficient to plausibly state a Fourth Amendment violation. *See Hart*, 798 F.3d at 592.

To the extent the Plaintiff raises various other allegations and assertions connected to the CSs, the Court has reviewed them all.[2] However, most do not identify inaccurate information

---

[2] For example, most of the Plaintiff's allegations appear to be attempts at establishing Defendant Lessner's mental state of recklessness without first plausibly alleging false or inaccurate information from a CS included in or omitted from the affidavit. In the Amended Complaint, these allegations include: "[t]hat in the course of Lessner's duties, he never met with this Confidential Source or the other, rather he obtained any and all information from the Elkhart County I.C.E. Unit"; "this information was not personal knowledge, nor first hand or made with the intentions that the personal actually knew Rodriguez"; "it was based on 'hearsay within hearsay'"; and "[t]his information did not contain reliable information neither did the affiant establish the credibility of the source." Am. Compl. ¶¶ 20–21, ECF No. 136. And, in the Plaintiff's brief in response to the Defendants' motion to dismiss, these assertions include: "the statement [in paragraphs 9–10] provides no date or evidence to substantiate any of [the] allegations;" CS "does not state single fact of how she knew Plaintiff or information"; an "allegation [] was never corroborated or established"; there is "no evidence or detailed information to substantiate CS account" of the "Plaintiff supplying multiple people and list price amount"; "presenting such allegations without corroborating" "[t]he . . . accusation [was] . . . without any details or knowledge of [the Plaintiff]"; "Lessner solely corroborated that CASPER is Plaintiff by his own undescribed account and that the place of business belonged to Plaintiff"; CS "provides no details or evidence to substantiate any of his/her allegations;" "the . . . allegation of Plaintiff trafficking . . . was never established or

from a CS that Defendant Lessner included in the affidavit nor do most identify an omission related to the credibility of at least one of the CSs. For the allegations and assertions that did, the Plaintiff does not develop any of these to explain a reason why including the inaccurate or omitted information would have made a difference in the federal magistrate judge's decision to issue the search warrant.

Nevertheless, the Court will next address three of the Plaintiff's arguments that are connected to the CSs: (1) Defendant Lessner fabricated the information from the CSs; (2) the Plaintiff denies the allegations made against him by the CSs; and (3) Defendant Lessner falsely stated that the Plaintiff had an Indiana state license plate that read CASPER.

First, in the Amended Complaint, the Plaintiff makes allegations about a CS and a September 28, 2016 report:

> On September 28, 2016, an investigative report was made which listed that Elkhart County I.C.E. Unit received information from a Confidential Source . . . . This information was used to prepare an affidavit by Lessner in both the September and August Affidavit to search [my] phone, which lead to the search of his home. However, the affidavit was dated before the I.C.E. Unit retrieved the statements

corroborated"; information from the CS does not "meet the minimum requirement to establish probable cause determination concerning informant's credibility"; "[b]y CS stating that Plaintiff was trafficking narcotics in the vehicles associated to the business but does not provide any further details on how she would know, it seems that more corroborating information is required"; "personal information, provided of Plaintiff, was about his previous Federal Charge, which again is public information"; "Lessner uses Plaintiff's criminal history to corroborate the CS's account . . . [, but] it seems that more corroborating information is required"; "there was no evidence . . . that Lessner or investigators independently corroborated . . . Confidential Sources' story before seeking a search warrant"; "Confidential Source here, never testified nor went with either Lessner or investigators to Plaintiff's home, they did not buy drugs there . . . or ever went to Plaintiff's home to see him selling"; "Confidential Sources here, never explained how they knew about the information they provided or Plaintiff's activities"; "[b]ased upon the alleged statements by Confidential Sources, it is known that the Confidential Sources here, were not established to be reliable, credible"; "it was hearsay within hearsay with no personal nor first-hand knowledge provided"; and "such assertion is hearsay within hearsay and no investigator ever corroborated such claim." Pl. Resp. Br. 12–19, 29, ECF No. 229. To the extent the Plaintiff cites *Taylor v. Hughes*, 26 F.4th 419, 427 (7th Cir. 2022), for the proposition that a warrant procured by lies or with reckless disregard for the truth is void, Pl. Resp. Br. 23, ECF No. 229, *Taylor* does not stand for that proposition. Instead, the *Taylor* court explained, "To earn a trial on such a claim, a § 1983 plaintiff must bring forth enough evidence to permit a reasonable jury to conclude that the defendant officer made intentional or reckless misrepresentations of fact that were necessary to the finding of probable cause." 26 F.4th at 427 (citation omitted).

> from a Confidential Source (September 1, 2016), which only makes it impossible for Lessner (the affiant) to have submitted the affidavit accordingly, and such affidavit could not have been turned in until after the statement was acquired, which was September 28, 2016, according to the dates on the documents provided by the Elkhart County I.C.E. Unit.

Am. Compl. ¶ 19, ECF No. 136. In his response brief, the Plaintiff explains that these allegations mean "[t]he dates in which the Confidential Source made her statement was previously reported on September 28, 2016, according to ICE Unit investigators,[] which Lessner by this time submitted the contents in his [other] Affidavits, dated August 29 and September 01, 2016." Pl. Resp. Br. 12, ECF No. 229 (cleaned up).

From these allegations, it appears the Plaintiff is alleging that Defendant Lessner fabricated the information from the first CS because the September 28, 2016 report listing the CS is dated after an affidavit that Defendant Lessner submitted with another search warrant. However, the Plaintiff attaches to his response brief Defendant Lessner's August 29, 2016 affidavit and the September 1, 2016 affidavit, though the Plaintiff only referred to the September 1, 2016 affidavit in the Amended Complaint. The Court bases its Order on the September 1, 2016 affidavit because, as stated above, the Plaintiff does not allege a difference in this context between the August 29, 2016 affidavit (Pl. Ex. 4) and the September 1, 2016 affidavit (Pl. Ex. 5), which appear to be the same or very similar, the August 29, 2016 affidavit was not referenced in the Amended Complaint, and the August 29, 2016 affidavit is not public information.

Defendant Lessner's September 1, 2016 affidavit reported that he was "aware of a recent debriefing of an EC-ICE documented Confidential Source (CS) by EC-ICE Investigators" along with what he was told the CS said during the debrief. Pl. Ex. 5, ¶ 10, ECF No. 229-1, p. 30. The Plaintiff does not address the fact of the debrief or call into question the debrief in any way. In light of these statements that Defendant Lessner relied on the debrief of the CS, the mere fact of the existence of the later September 28, 2016 EC-ICE investigative report listing the CS does not

indicate that it was impossible for Defendant Lessner to learn the information about the CS from somewhere else—such as the debrief, as the Plaintiff contends. Nor does the fact of the September 28, 2016 investigative report contradict Defendant Lessner's statement that he learned the information about the CS from the debrief. The Plaintiff has not offered any argument to question Defendant Lessner's reliance on the debrief of the CS. Thus, even giving the Plaintiff the benefit of his factual allegations about the September 28, 2016 investigative report and the September 1, 2016 affidavit, he does not plausibly suggest that Defendant Lessner fabricated the first CS's statements to obtain the warrant for the search of the Plaintiff's home.

As to the second CS, the Plaintiff offers allegations similar to the September 28, 2016 report allegation:

> Furthermore, in the search warrant affidavit of Plaintiff's business, on paragraph 17 it states that "on June 13, 2016 "UC-323" of the Elkhart County ICE Unit, spoke with CS15-014, naming "Brian Schroth" obtained her statement (see exhibit-17, *Page 9* of 23, Paragraph 17), while in contrary to that account, Elkhart County ICE Unit Reports (Exhibit-18), of the same statement, state's that "on 06-13-16, "I" spoke with CS15-014" which according to that document provided by the Elkhart County Prosecuting Office, it describes a different Undercover "UC205", of having collected her statement.

Pl. Resp. Br. 17–18, ECF No. 229.

Although the Plaintiff is arguing that two documents establish that two investigators obtained the second CS's statements on June 13, 2016, and that the second CS's statements are included in Defendant Lessner's affidavit, this factual content does not plausibly suggest that Defendant Lessner included a false statement from the second CS or omitted information to obtain the search warrant. As with the first CS, the Plaintiff does not address the fact of the debrief or call into question the debrief in any way, which is how Defendant Lessner states that he also learned about the information from the second CS. The mere fact of the existence of two documents that establish that two other investigators obtained the second CS's statements on

June 13, 2016, does not indicate that Defendant Lessner could not have learned about the information from the second CS at the debrief. Nor does the fact of the two documents contradict Defendant Lessner's statement that he learned the information about the second CS from the debrief. Also, the Plaintiff has not offered any allegations to question Defendant Lessner's reliance on the debrief. Thus, even giving the Plaintiff the benefit of his factual allegations about the two documents and the two investigators, he does not plausibly suggest that Defendant Lessner made a false statement or omitted information related to the information from the second CS to obtain the search warrant.

Second, in his brief in response to the Defendants' motion to dismiss, the Plaintiff contends that the information that Defendant Lessner included in the affidavit from the first CS was false because the "Plaintiff . . . denies each and every allegation." Pl. Resp. Br. 13, ECF No. 229. For the second CS, the Plaintiff also asserts that he "denies these allegations." *Id*. at 16. However, these denials are conclusory because they are unsupported by any factual allegations as to what the accurate information is that Defendant Lessner should have provided compared to the information provided by the first or second CS and included in Defendant Lessner's affidavit. *Cf. Johnson*, 580 F.3d at 670. Therefore, the Plaintiff's unsupported denials are insufficient to plausibly suggest that there was an inaccuracy or lie in the information from the first or second CS that Defendant Lessner included in the affidavit.

Third, the Plaintiff argues in the context of the information from the first CS that Defendant Lessner falsely stated in the affidavit that the Plaintiff had a state of Indiana license plate that read CASPER because "Indiana Motor Vehicles can corroborate the false assertion by Lessner." Pl. Resp. Br. 14, ECF No. 229. Although this argument identifies an alleged factual error in Defendant Lessner's affidavit, the Plaintiff does not explain how the probable cause determination by the federal magistrate judge hinged on the statement that the Plaintiff had a

state of Indiana license plate that read CASPER. And even deleting the information about the license plate from the affidavit, the affidavit still noted that the CS knew that Casper owned the business R&R Auto Sales in Elkhart, Indiana—for which the affidavit reported that public records established that the incorporator of the business is listed as the Plaintiff—and that Defendant Lessner knew through the ongoing investigation into the Plaintiff that Casper was the Plaintiff. Thus, even giving the Plaintiff the benefit of his contention that Defendant Lessner falsely stated that the Plaintiff had an Indiana state license plate that read CASPER, there is no indication that the information about the license plate was material to the probable cause determination because even without that information the affidavit establishes that Casper is the Plaintiff.

Accordingly, the Court finds that the Plaintiff has not plausibly alleged that, in providing information the affidavit from the CSs, Defendant Lessner knowingly, intentionally, or with reckless disregard for the truth made a false statement material to the probable cause determination or that he intentionally or recklessly withheld material information.

3.    *August 23, 2016 Undercover Buy From Jorge B. Moreida (Affidavit Paragraphs 19–29)*

According to the affidavit, on August 23, 2016, Defendant Lessner, acted in an undercover capacity and met with Jorge B. Moreida, a known associate of the Plaintiff, at his 54353 Berkley Avenue, Elkhart, Indiana residence and coordinated the purchase of eight ounces of methamphetamine later that same day. Pl. Ex. 16, ¶¶ 12, 19, ECF No. 229-1, pp. 88, 90; Def. Att. 1 ¶ 19, ECF No. 188-1. The affidavit reported that right after the undercover meeting between Defendant Lessner and Moreida, Moreida contacted the Plaintiff by cell phone at cell phone number (260) 431-9552 and that the contact was verified through a federal search warrant for toll (incoming and outgoing calls) information executed on Moreida's cell phone. *Id.* ¶ 21.

The affidavit also reported that the cell phone with the number (260) 431-9552 was known to be possessed by the Plaintiff. *Id.* ¶ 7.

The affidavit further reported that ATF and EC-ICE surveillance units observed Moreida leave his residence driving a red pickup truck directly to R&R Auto Sales where he met with the Plaintiff, and a federal search warrant providing GPS data and cellular tower data executed on Moreida's cell phone corroborated his location. *Id.* ¶ 22. The investigators maintained surveillance on R&R Auto Sales and observed a black Dodge Challenger occupied by the Plaintiff and Moreida leave southbound on County Road 45 driving to the Plaintiff's residence, and GPS data and cell tower data corroborated Moreida's location at the Plaintiff's residence. *Id.* ¶ 23.

The affidavit also reported that, at approximately 21:15 hours, GPS data and cell tower data of Moreida's cell phone indicated that he was in transit and leaving the area of the Plaintiff's residence heading north toward Elkhart, Indiana. *Id.* ¶ 24. ATF and EC-ICE investigators observed Moreida drive to his residence in the black Dodge Challenger, go inside, exit a short time later, and drive to 1501 E. Bristol Street where Moreida anticipated that Defendant Lessner would be waiting for him to conduct the narcotics transaction. *Id.* ¶ 25. However, Defendant Lessner had not yet arrived, so Moreida waited for several minutes and then returned to his residence. *Id.* Defendant Lessner communicated over voicemail and text messages multiple times with Moreida, and Moreida indicated that he would meet with Defendant Lessner at 1501 E. Bristol Street to conduct the sale of the methamphetamine. *Id.* ¶ 26. At approximately 22:16 hours, Defendant Lessner arrived at 1501 E. Bristol Street, and Defendant Lessner observed Moreida sitting in the driver's seat of the Dodge Challenger. *Id.* ¶ 28. He entered Moreida's vehicle and purchased eight ounces of methamphetamine, which EC-ICE later confirmed tested positive for the presence of methamphetamine. *Id.* ¶¶ 28–29.

Further, the affidavit highlighted that Defendant Lessner met with Moreida on thirteen separate ocassions in an undercover capacity, while present in the Northern District of Indiana, during multiple controlled ATF operations purchasing varying quantities of methamphetamine, ranging from one ounce to sixteen ounces and that twice was pink. *Id.* ¶ 20. The affidavit noted that Moreida told Defendant Lessner that he also sold green methamphetamine, and that Defendant Lessner knew Moreida to be strongly associated with the Plaintiff. *Id.*

In his response brief, the Plaintiff exaggerates Defendant Lessner's statement in Paragraph 21 of the affidavit. Paragraph 21 is the paragraph that reported that immediately after the undercover meeting between Defendant Lessner and Moreida, Moreida contacted the Plaintiff at cell phone number (260) 431-9552 and that the contact was verified through a federal search warrant for toll (incoming and outgoing calls) information executed on Moreida's cell phone. Giving the Plaintiff the benefit of his allegations, he appears to argue that, because Officer Whitmyer did not verify that cell phone number (260) 431-9552 belonged to the Plaintiff until August 27, 2016, the federal warrant only authorized the investigators to see incoming and outgoing calls for Moreida's phone, and the phone number (260) 431-9552 was not registered to the Plaintiff, Defendant Lessner could have only used an unauthorized interception of wire in the form of a Stingray device to verify that the cell phone with the phone number (260) 431-9552 belonged to the Plaintiff, which he did not tell the federal magistrate judge about in his affidavit. *See* Pl. Resp. Br. 23–24, ECF No. 229. The Plaintiff argues that the purported omission of the use of a Stingray was material to the probable cause determination because "no evidence derived [from an unauthorized interception of wire] may be received in evidence in any trial, hearing, or other proceeding in or before any court." *Id.* at 29.

However, the Plaintiff has not offered any facts to plausibly allege that Defendant Lessner used a Stingray device to obtain the information that cell phone number (260) 431-9552

belonged to the Plaintiff. Defendant Lessner stated in the affidavit that the cell phone with the number (260) 431-9552 was known to be possessed by the Plaintiff. He did not state the date on which he learned that information. That Officer Whitmyer verified that the cell phone with the number (260) 431-9552 belonged to the Plaintiff on August 27, 2016, which was four days after the August 23, 2016 phone call, does not contradict Defendant Lessner's statement. Also, there is no allegation in the Amended Complaint that Defendant Lessner used a Stingray device to learn that the cell phone belonged to the Plaintiff or that Defendant Lessner knew or should have known that a Stingray device was used to identify the cell phone's owner.

Even if the Plaintiff had plausibly alleged that Defendant Lessner omitted the use of a Stingray device, the information that Moreida called the Plaintiff right after the meeting between Defendant Lessner and Moreida to coordinate the purchase of eight ounces of methamphetamine for later that same day would not have been material to the probable cause determination. This is because the affidavit also indicates that, after the meeting on August 23, 2016: surveillance units observed Moreida leave his residence and drive directly to R&R Auto Sales where he met the Plaintiff; next the surveillance units observed a black Dodge Challenger occupied by the Plaintiff and Moreida leave R&R Auto Sales and drive to the Plaintiff's residence; later GPS data and cell tower data of Moreida's cell phone indicated that he was in transit and leaving the area of the Plaintiff's residence heading north toward Elkhart, Indiana; then surveillance units observed Moreida drive to his residence in the black Dodge Challenger, go inside, exit a short time later, and drive to 1501 E. Bristol Street where Moreida anticipated that Defendant Lessner would be waiting for him to conduct the narcotics transaction; and eventually Defendant Lessner entered Moreida's vehicle and purchased eight ounces of methamphetamine, which EC-ICE later confirmed tested positive for the presence of methamphetamine. Whether Moreida met with Defendant Lessner to coordinate the purchase of eight ounces of methamphetamine for later that

26

same day and immediately after the meeting called the Plaintiff and then went to the Plaintiff's business or just went to the Plaintiff's business without calling the Plaintiff, the material facts are the same: after the meeting with Defendant Lessner to coordinate the purchase of eight ounces of methamphetamine for later that same day, Moreida went directly to the Plaintiff's business, then to the Plaintiff's residence with the Plaintiff, and then from the Plaintiff's residence to sell methamphetamine to Defendant Lessner in Elkhart.

For this reason, the additional alleged omissions that the Plaintiff identifies without explaining their materiality—that Defendant Lessner did not include in the affidavit that Moreida was at R&R Sales prior to his "coordination meeting" with Defendant Lessner, Defendant Lessner went to that coordination meeting without funds and was not there to conduct a buy, and Moreida offered to make a deal with Defendant Lessner prior to consulting with the Plaintiff— would also not be material. Besides, that Defendant Lessner went to the coordination meeting without funds and was not there to conduct a buy is implied by the facts set forth in the affidavit including that the meeting was to coordinate the methamphetamine purchased for later that day; thus, that allegation would not be material for that additional reason.

Accordingly, the Court finds that the Plaintiff has not plausibly alleged that, in the affidavit about the events of August 23, 2016, Defendant Lessner knowingly, intentionally, or with reckless disregard for the truth made a false statement material to the probable cause determination or intentionally or recklessly withheld material information.

4.    *September 10, 2016 Cell Phone Pings from the Plaintiff's Phone in Fort Wayne, Indiana, and Surveillance at the Plaintiff's Residence (Affidavit Paragraphs 30–32)*

According to the affidavit, on September 10, 2016, Defendant Lessner knew that a federal search warrant for GPS data and cell tower information executed on a phone known to be possessed by the Plaintiff showed the Plaintiff to be in Fort Wayne, Indiana. Pl. Ex. 16, ¶ 30,

ECF No. 229-1, p. 93; Def. Att. 1 ¶ 30, ECF No. 188-1. The affidavit stated that at 16:08 hours, the ping indicated that the Plaintiff was at a gas station in Fort Wayne (3116 W. Coliseum Blvd., Fort Wayne, Indiana 46808). *Id*. And at 16:25 hours, the ping showed that the Plaintiff was at the Rodeway Inn (2920 Goshen Road, Fort Wayne, Indiana 46808). *Id*. Between 16:08 hours and 16:25 hours, the Plaintiff received a call associated with a Mexican telephone number, which was corroborated through a federal search warrant for toll information (incoming and outgoing calls) executed on the Plaintiff's cellphone number. *Id*. The affidavit stated that the Plaintiff remained mobile in the Fort Wayne area for approximately 30 minutes, and his cellphone pings showed him returning to his residence without any stops. *Id*. ¶ 31. EC-ICE surveillance units observed the Plaintiff arrive at his residence and remove a package from the vehicle. *Id*. ¶ 32.

In his Amended Complaint, the Plaintiff did not address this portion of Defendant Lessner's affidavit on the September 10, 2016 surveillance of him in Fort Wayne. However, in his response brief, the Plaintiff argues:

> On paragraph 30-32, based on precision location global positioning (GPS) data and cellular tower information executed on a phone known to be possessed by Plaintiff, Lessner alleges that at 4:08 p.m., the ping indicated Plaintiff was located at a gas station that in Fort Wayne, IN., even describing the address involved. Moreover, Lessner indicates that at 4:25 p.m., the ping showed Plaintiff to be at the [Rodeway] Inn, again describing the address involved. He further asserts Plaintiff remaining mobile in the Fort Wayne area for approximately 30 minutes, then the ping showed Plaintiff returning to his home. Thereafter, ICE Unit investigators supposedly observed Plaintiff remove a package from the vehicle.

> In contrary to Lessner's detailed account, Supplementary report and testimony by Officer Whitmyer, state that on September 10, 2016, at approximately 5:00 p.m., ICE Unit investigators noticed that the ping was active on phone belonging to Plaintiff, was headed south away from Elkhart area towards Fort Wayne. That at approximately 7:15 pm Plaintiff appeared to be headed back towards the Elkhart area. The times found in supplemental report and testified at trial as compared to the times attested to in the warrant affidavit are inconsistent, which further supports Plaintiff's assertions that the warrant was created under false pretense.

> Plaintiff asserts that this misrepresentation by Lessner is material because: Lessner deliberately falsified allegations to demonstrate probable cause, and his reckless disregard of the truth misrepresented and tainted the entire affidavit, in particular paragraph 12-18, by deceptive omission to the issuing judge.

Pl. Resp. Br. 21–22, ECF No. 229 (cleaned up). That another officer referred to the times of cell phone pings with approximate times rather than the more precise times that Defendant Lessner gave does not call into question the times that Defendant Lessner provided. *Cf. United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) (explaining that "[t]he fact that [a plaintiff] can point out additional things which could have been done but were not does not in any way detract from what was done"). And both Defendant Lessner and Officer Whitmyer based their times on the cell phone pings, but the Plaintiff does not address the pings in a way that would make the times of the pings material to the probable cause determination.[3]

---

[3] According to Defendant Lessner's affidavit, a federal search warrant for precision location global position (GPS) data and cell tower information was executed on a cell phone known to be possessed by the Plaintiff with the phone number (260) 431-9552, which was active from September 2, 2016, to September 15, 2016, and confirmed the Plaintiff to stay at the 71395 County Road 25, New Paris, Indiana address. Pl. Ex. 16, ¶ 7, ECF No. 229-1, p. 86.

The Amended Complaint does not address Defendant Lessner's statement about the dates this warrant was active. However, in his response brief, the Plaintiff argues:

> In addition, Brian Schroth, a peace Officer of the Elkhart County ICE Unit, furnished a sworn application further information concerning the warrant for ping and pen register regarding the above, stating that the warrant for pinging Plaintiff's cellular telephone was active on September 3rd, 2016 to September 19, 2016, (see exhibit-8, pg. 2, prg. 26). The dates submitted in this additional affidavit as compared to the dates attested to in the warrant are inconsistent, which further supports Plaintiff's assertion that the warrant was created under false pretense. Moreover, Brian asserts that a federal prosecutor reviewed the affidavit that list a warrant to have been activated from the 3rd to the 19th, in contrary to the Government's response of not having any knowledge of such, (see exhibit-6).

Pl. Br. 10, ECF No. 229. From these allegations, the Plaintiff appears to assert that Defendant Lessner's statement in the affidavit—that the federal warrant was active from September 2, 2016, to September 15, 2016—was false because Officer Schroth stated in another application that the federal warrant was active from September 3, 2016, to September 19, 2016. However, the Plaintiff does not explain how the shorter time range provided by Defendant Lessner was material to the federal magistrate judge's probable cause determination. The facts included by Defendant Lessner are the same whether the warrant was active from September 2, 2016, to September 15, 2016, or from September 3, 2016, to September 19, 2016. The Plaintiff does not identify any reference to pings in Defendant Lessner's affidavit that occurred after September 16, 2016.

Moreover, the Plaintiff has not shown that the timing is inconsistent in any material way. Defendant Lessner wrote that, after the 4:25 p.m. stop at the Rodeway Inn, which the Court takes judicial notice as on the Northwest side of Fort Wayne, the Plaintiff drove in the Fort Wayne area for approximately 30 minutes, which would have been close to 5:00 p.m. This is not inconsistent with a statement by Whitmyer that a ping showed the Plaintiff at approximately 5:00 p.m. driving toward Fort Wayne from the direction of the Elkhart area, which the Court takes judicial notice as Northwest of Fort Wayne. Neither Defendant Lessner nor Whitmyer indicate how far from Fort Wayne the Plaintiff was at 5:00 p.m. The Court further takes judicial notice that the Plaintiff's residence is approximately one hour and fifteen minutes by car from Fort Wayne, Indiana, driving in the direction of the Elkhart area. Thus, Defendant Lessner's statement that the Plaintiff was observed at his residence after he left Fort Wayne is not inconsistent with Officer Whitmyer's statement that at 7:15 p.m., the Plaintiff was headed in the direction of the Elkhart area.

Importantly, the Plaintiff does not dispute Defendant Lessner's report that the Plaintiff received a call associated with a Mexican phone number while he was in Fort Wayne or that investigators conducting surveillance at the Plaintiff's residence observed the Plaintiff remove a package from the vehicle.

Accordingly, the Court finds that the Plaintiff has not plausibly alleged that, in providing information in the affidavit about the events of September 10, 2016, Defendant Lessner knowingly, intentionally, or with reckless disregard for the truth made a false statement material to the probable cause determination or intentionally or recklessly withheld material information.

5.      *October 28, 2016 Undercover Buy From Moreida and Surveillance of the Plaintiff and Moreida (Affidavit Paragraphs 33–56)*

According to the affidavit, on October 28, 2016, at 13:56 hours, Defendant Lessner was contacted by Moreida from cellphone number (574) 389-6775 by text message. Pl. Ex. 16, ¶ 33, ECF No. 229-1, p. 94; Def. Att. 1 ¶ 33, ECF No. 188-1. The affidavit reported that Moreida agreed to sell Defendant Lessner sixteen ounces of methamphetamine for $11,000 with Defendant Lessner paying $8,500 on that day and the remaining $2,500 on a later date. *Id.* Moreida indicated that he would meet Defendant Lessner at 1501 E. Bristol Street, Elkhart, Indiana, 46514. *Id.* During the text messaging, ATF and EC-ICE surveillance units observed at R&R Auto: Moreida, the Plaintiff, a gold Lincoln Navigator known to be associated with and driven by the Plaintiff, and a black Nissan Murano SUV (Indiana license plate 716NC) known to be driven by Moreida and utilized by him during an October 22, 2016 methamphetamine purchase. *Id.* ¶ 34.

The affidavit also reported that, at 14:45 hours, investigative surveillance units observed Moreida and the Plaintiff enter the black Nissan Murano and leave R&R Auto driving southeast on Hammond Avenue with Moreida sitting in the front passenger seat and the Plaintiff operating the vehicle. *Id.* ¶ 35.[4] At 14:59 hours, the investigative surveillance units observed the black Nissan Murano enter a mobile home park in Goshen, Indiana, and stop in front of a mobile home and the Plaintiff enter the mobile home while Moreida remained inside the vehicle. *Id.* ¶ 36. At 15:04 hours, the investigative surveillance units observed the Plaintiff exit the mobile home and re-enter the black Nissan Murano on the driver's side of the vehicle and then operate it, leaving the mobile home park and driving south from the Goshen area. *Id.* ¶ 37.

---

[4] The affidavit notes that the times are approximate.

At 15:25 hours, investigative surveillance units observed Moreida and the Plaintiff arrive in the black Nissan Murano at the Plaintiff's residence, both exit the vehicle, and both walk under the porch overhang toward the front door of the residence. *Id.* ¶ 38. At 15:40 hours, investigative surveillance units observed the Plaintiff and Moreida exit the door located near the garage of the Plaintiff's residence and Moreida walk to the passenger side of the black Nissan supporting with his left hand a protrusion in the front left of his gray sweatshirt as he entered the vehicle. *Id.* ¶ 39. At 15:41 hours, surveillance units observed the Plaintiff and Moreida leave the Plaintiff's residence and drive northbound toward Elkhart, Indiana. *Id.* ¶ 40.

The affidavit then noted that, at 16:21 hours, Defendant Lessner arrived at 1501 E. Bristol Street, Elkhart, Indiana, 46513, awaiting the arrival of Moreida to conduct the methamphetamine transaction with surveillance units pre-positioned in the vicinity. *Id.* ¶ 41. At 16:39 hours, surveillance units observed: the Plaintiff and Moreida drive to a Metro PCS wireless dealer (1808 E. Bristol Street, Elkhart, Indiana 46514), the Plaintiff exit the driver side of the vehicle and entered the Metro PCS store, and Moreida exit the passenger side of the vehicle and enter on the driver's side of the vehicle. *Id.* ¶ 42.

At 16:39 hours, surveillance units observed Moreida leave the Metro PCS wireless dealer alone in the black Nissan Murano, which was 0.4 miles to 1501 E. Bristol Street, Elkhart, Indiana 46514. *Id.* ¶ 43. At 16:39 hours, surveillance units observed Moreida arrive at 1501 E. Bristol Street, and Defendant Lessner observed the black Nissan Murano drive into the parking lot from Lilac Street and park alongside Defendant Lessner's vehicle. *Id.* ¶ 44. At 16:41 hours, Moreida exited his vehicle and entered the front seat of Defendant Lessner's vehicle. *Id.* He then handed Defendant Lessner a McDonalds restaurant bag that was tightly wrapped around the suspected methamphetamine; Defendant Lessner could feel a grainy/crystal like substance inside the bag and could detect a strong chemical odor coming from the bag. *Id.* ¶¶ 45–46. Defendant

Lessner paid the $8,500 in prerecorded ATF agent cashier funds to Moreida for sixteen ounces of methamphetamine, and Moreida indicated that the substance was one pound of methamphetamine and that Defendant Lessner owed $2,500 more. *Id*. The substance was later confirmed by EC-ICE to have tested positive for methamphetamine. *Id*. ¶ 56.

The affidavit also noted that at 16:43 hours, Moreida exited Defendant Lessner's vehicle and entered the driver side front seat of the black Nissan Murano, and he was observed by surveillance units driving the vehicle north onto Lilac Street and heading east on Bristol Street. *Id*. ¶ 47. At 16:44, surveillance units observed Moreida arrive at the Metro PCS wireless dealer (1808 E. Bristol Street, Elkhart, Indiana) and park the black Nissan Murano directly in front of the Metro PCS store. *Id*. ¶ 48. At 16:45 hours, only several seconds after Moreida's arrival, surveillance units observed the Plaintiff exiting the Metro PCS store and entering the passenger side of the black Nissan Murano and then the Plaintiff and Moreida departing the Metro PCS store in the vehicle. *Id*. ¶ 49.

In the Amended Complaint, the Plaintiff does not address the affidavit's description of the events of October 28, 2016. However, in his response brief, the Plaintiff contends:

> Finally, the October 28, 2016, Affidavit describes how Moreida contacted Lessner in hopes to land a drug sale, while Moreida was at Plaintiff's business. During the course of this alleged transaction, Moreida was in his girlfriend's Nissan Murano alike he previously did, which Plaintiff drives to several locations before Moreida met Lessner. Throughout the course of this event, aerial video footage monitors Moreida's whereabouts by the use of a helicopter. The video starts at the place of business and proceeds to record his movements thereafter, the affidavit presents a scenario that focuses on Moreida prior to the delivery, failing to mention that a week prior to this transaction Moreida and Lessner agreed to make a deal on that day and at that specific time, where, this as well is to inconclusive too assume that Moreida retrieved drugs from any of the locations related to Plaintiff. Moreover, Moreida could have already arrived at business with the drugs he arranged to sell, prior to and was waiting on Lessner to come around so he could finalize his task. Here, Lessner misrepresents the facts and falsifies Plaintiff's association to be greater or appear to be at certain places that he is not, in demonstrating probable cause to issue a warrant.

33

Pl. Resp. Br. 32, ECF No. 229 (cleaned up).

While the Plaintiff asserts that Defendant Lessner omitted that a week prior to the transaction Moreida and Defendant Lessner agreed to make a deal on that day and at that specific time, the Plaintiff does not explain why the facts in the affidavit would be insufficient for a finding of probable cause if the information about the earlier meeting were added. Considering all the other information in the affidavit about the Plaintiff's close proximity to Moreida prior to and throughout his methamphetamine deal with Defendant Lessner, the omission would not be material.

To the extent that the Plaintiff also suggests alternative inferences to the inference that Moreida received drugs from the Plaintiff's business or residence, he does not base the alternatives on an omission or false statement by Defendant Lessner, and Defendant Lessner's affidavit did not identify a specific inference related to the events of October 28, 2016. Thus, the Court need not address the materiality of the alternative inferences that the Plaintiff suggests.

Accordingly, the Court finds that the Plaintiff has not plausibly alleged that, in providing information in the affidavit about the events of October 28, 2016, Defendant Lessner knowingly, intentionally, or with reckless disregard for the truth made a false statement material to the probable cause determination or intentionally or recklessly withheld material information.

6.    *December 2015 Surveillance of the Plaintiff and Moreida in Peru, Indiana (Affidavit Paragraphs 12–18)*

According to the affidavit, on December 12, 2015, Defendant Lessner and EC-ICE investigators conducted mobile surveillance of Moreida, a known associate of the Plaintiff, who was driving a white Chevrolet Colorado pick-up truck. Pl. Ex. 16, ¶ 12, ECF No. 229-1, p. 88; Def. Att. 1 ¶ 12, ECF No. 188-1. The affidavit also stated that Moreida was known by the investigators to drive that vehicle and to have delivered methamphetamine to Defendant Lessner

during a previous controlled undercover operation, while driving the white Chevrolet Colorado. *Id*. The affidavit reported that Defendant Lessner and the other investigators were able to visually confirm that Moreida was driving the Chevrolet Colorado and that they were able to continually locate the position of it using a GPS tracking device that had been covertly placed on the truck by investigators pursuant to a State of Indiana court order. *Id*.

The affidavit also reported that Defendant Lessner and the other investigators followed Moreida from Elkhart, Indiana, to Warsaw, Indiana, and then to Silver Lake, Indiana, where they observed him meeting with the Plaintiff—driving a silver Ford Expedition bearing the Indiana license plate 707MBZ (and Defendant Lessner and the other investigators visually confirmed that the Plaintiff was driving the Ford Expedition)—at the McClure Gas Station. *Id*. ¶ 13. After a very brief meeting, Defendant Lessner and the investigators followed the Plaintiff and Moreida as they drove south to Peru, Indiana, in their respective vehicles directly to the K-Mart store. *Id*. ¶ 14. The affidavit noted that Defendant Lessner and the other investigators observed the Plaintiff park his silver Ford Expedition in a parking lot in front of the K-Mart and directly next to a four-door sedan occupied by one unidentified person and meet with the unidentified person for approximately three minutes. *Id*. ¶ 15. And immediately after that meeting, Defendant Lessner and the other investigators followed the Plaintiff and Moreida to the Plaintiff's residence, arriving at approximately 22:25 hours. *Id*. ¶ 16.

The affidavit also noted that at 22:37 hours, Defendant Lessner received a text message on his undercover cell phone from the cell phone known to be used by Moreida because it was used on a previous occasion to coordinate undercover methamphetamine purchases. *Id*. ¶ 17. The affidavit noted that Moreida indicated in the text message that he wanted to know if Defendant Lessner would be purchasing methamphetamine from him that week, and Moreida sent seven identical messages between 22:27 hours and 22:44 hours. *Id*. The affidavit stated that Moreida

and the white Chevrolet Colorado remained at the Plaintiff's New Paris, Indiana, residence for approximately 23 minutes. *Id.* ¶ 18. Moreida and the White Chevrolet Colorado were observed leaving and heading toward Elkhart where the vehicle was observed by EC-ICE parked in the driveway of 812 W. Indiana Avenue, Elkhart, Indiana. *Id*.

As to Defendant Lessner's statements in the affidavit, the Plaintiff alleges in the Amended Complaint that, "[o]n November 2, 2016, Brian conducted an interview of Moreida, . . . [and] [t]he information gathered . . . was used to further obtain probable cause . . . which was after officials had already executed both searches." Am. Compl. ¶ 12. The Plaintiff also alleges that "[I, hold] a C/D of a recorded interview of the search of his home on November 2, 2016, in support that Brian had just figured out why I and Moreida went to Peru Indiana, on December 11, 2015." *Id.* ¶ 14.[5] "Information that emerges after the warrant is issued has no bearing on this analysis" because "[courts] do not view probable cause determinations with hindsight." *Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009). In this case, the search warrant issued on October 31, 2016, yet this information from the interview of Moreida emerged on November 2, 2016, after the search warrant issued. Thus, that information has no bearing on the Court's analysis.

Also, in the Amended Complaint, the Plaintiff alleges:

[Lessner] states that on December 12, 2015, [I] drove directly to a K-mart store in Peru Indiana and met with an unknown individual for approximately 3 minutes.

---

[5] In his response brief, the Plaintiff attempts to clarify that by these allegations he meant:

This information [about the 2015 surveillance] wasn't fully gathered until Brian spoke with Moreida, the day of the search as described above and in the disc below, which was clearly after the execution of the search (see exhibit10- in, *disc-1, 2nd Recorded conversation, Min. 43.23-45.00*).

"so the guys got Moreida his singing, so there's a load its suppose to get delivered here to this address" "Brian figured out, we did ugh a surveillance back in December watched the guys go and meet in Peru and then come back and ah and bring the load back here with that same guy. I don't know if like".

Pl. Resp. Br. 21, ECF No. 229. But because the search occurred after the warrant issued, the information is irrelevant. *See Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009).

> Meanwhile, on December 11, 2015, Lessner and Brian conducted a surveillance of Moreida, . . . [; however,] if [I] was seen at a K-Mart store and met with anyone in a four door sedan, it would not have been documented.

Am. Compl. ¶ 13. He also alleges that "[I], did go to Peru Indiana on December 11, 2015, in a Ford Expedition, but did not go to a K-Mart store. [I stand] firm that [I] went to a Best Western and later met with Moreida at a BP gas station . . . ." *Id.* ¶ 15. Consequently, the Plaintiff further alleges that "the record is clear that on December 11, 2015, investigators did not thoroughly conduct surveillance on Moreida like they said they did." *Id.* ¶ 16.

> Then in his response brief, the Plaintiff adds:

> Lessner provided details of an occurrence concerning a trip to Peru, Indiana, between Moreida and [me], which investigators well documented on 12-14-2015 (*see exhibit-11*). Lessner implicated the date to be December 12, instead of December 11, 2015, moreover he indicated [I] went to a K-Mart Store and met with unidentified individual. [I have] always been in contrary to the allegation of driving passed a K-Mart Store or parked in front of, on December 11, 2015, like Lessner has falsified.

Pl. Resp. Br. 20–21, ECF No. 229.

> Thus, it appears that the Plaintiff contends that Defendant Lessner's statement that the surveillance took place on December 12, 2015, is inaccurate because it took place on December 11, 2015. However, the Plaintiff has not alleged any reason to believe that including the correct date would have made a difference in the federal magistrate judge's decision to issue the warrant. *Cf. Zambrella v. United States*, 327 F.3d 634, 639 (7th Cir. 2003) ("Zambrella's argument in support of a *Franks* hearing fails for the additional reason that there is no reason to believe that including the correct date (August 13, 2000 rather than August 21, 2000) . . . would have made a difference in the judge's decision to issue the warrant.").

> Another argument appears to be that Defendant Lessner falsely stated that he observed the Plaintiff at K-Mart when the Plaintiff was at the Best Western. However, the Plaintiff does not allege why the false statement was knowing, intentional, or reckless. Even if he had, the

Plaintiff has not alleged any reason to believe that including that the Plaintiff was at the Best Western instead of the K-Mart would have made a difference in the federal magistrate judge's decision to issue the warrant. Although Defendant Lessner stated that he observed the Plaintiff meet an unnamed person at the K-Mart, there is no indication that the meeting between the Plaintiff and the unnamed person at the K-Mart would have been material to the decision to issue the warrant.

Accordingly, the Court finds that the Plaintiff has not plausibly alleged that, in providing information in the affidavit about the December 2015 surveillance, Defendant Lessner knowingly, intentionally, or with reckless disregard for the truth made a false statement material to the probable cause determination or intentionally or recklessly withheld material information.

7.    *Nexus*

Although not in the Amended Complaint, in his response brief, the Plaintiff contends:

> In the present case, the search warrant affidavit contained a boilerplate allegation that drug traffickers often possess firearms and drugs. However, Lessner did not present evidence that any agents or information made buys directly from Plaintiff, or that a reliable confidential informant had purchased drugs there, much less physically seen narcotics at the residence.

Pl. Resp. Br. 30, ECF No. 229.

However, the applicable standard is that

> for a search warrant, probable cause does not require direct evidence linking a crime to a particular place. Rather, issuing judges may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and the offense. Thus, an affidavit submitted in support of a warrant application need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place. In the case of drug dealers, this circuit has recognized, evidence is likely to be found where the dealers live.

*United States v. Zamudio*, 909 F.3d 172, 175–76 (7th Cir. 2018) (cleaned up). But because the claim against Defendant Lessner is based on a Fourth Amendment violation for the submission

38

of a false affidavit, to plausibly allege such a claim, the Plaintiff would need to allege that, in the information that Defendant Lessner provided in the affidavit about the nexus, he knowingly, intentionally, or with reckless disregard for the truth made a false statement material to the probable cause determination or intentionally or recklessly withheld material information. *See Edwards*, 907 F.3d at 1061; *Greenpoint*, 38 F.4th at 567–68. The Plaintiff makes no such allegation related to the affidavit establishing a fair probability that evidence that the Plaintiff was involved in an ongoing conspiracy with associates known by Defendant Lessner to distribute methamphetamine would be found at the Plaintiff's home.

Instead, the Plaintiff contends:

On August 23, 2016, where Lessner claims that Moreida agreed to make a deal with him later on that day, and went to Plaintiff's business, his house prior to delivering drugs. Again, important details were deliberately left out to mislead the narrative and demonstrate a so-called pattern concerning criminal activity, making it seem that Moreida went to Plaintiff to obtain the drugs he sold to Lessner. Again Lessner deliberately left out that Moreida was already working at RnR Sales with Plaintiff and he was using Monica's red pick-up truck to drop off lumber at his residence, when Lessner appeared and discussed about a drug transaction.

Pl. Resp. Br. 30–31, ECF No. 229. In those allegations, the Plaintiff does not plausibly allege that Defendant Lessner knew or should have known at the time of the affidavit that Moreida worked at R&R Sales or that Moreida was using the red pickup to drop off lumber. Thus, the materiality of either fact to the "fair probability" question is irrelevant.

The Plaintiff also contends that "Lessner deliberately left out that at the time he met with Moreida he was not ready to obtain any drugs and would need money brought to him later on that day." Pl. Resp. Br. 31, ECF No. 229. However, the Plaintiff does not indicate whether this information was material to the probable cause determination. It would not have been. As discussed above, Defendant Lessner noted in the affidavit that he first met with Moreida on August 23, 2016, to coordinate the purchase of eight ounces of methamphetamine for later that

day, which indicates that Defendant Lessner was not ready to obtain the methamphetamine or pay for it at that time.

The Plaintiff additionally asserts that Defendant Lessner omitted from the affidavit that "Moreida did not discuss with Plaintiff prior to making any deal with Lessner nor did he call Lessner right after he called Plaintiff to verify any deal, while Moreida has done this approximately on 13 separate occasions, not once did he call Plaintiff to verify prior to." Pl. Resp. Br. 31, ECF No. 229. However, these assertions are insufficient because the Plaintiff has not developed them to explain why including the purported omitted information would have made a difference in the federal magistrate judge's decisions to issue the search warrant.

Then the Plaintiff contends, "[I]f Moreida was depending on Plaintiff like this affidavit describes, he would at least verified that drugs were available before the deal." *Id*. This contention is the Plaintiff's speculation about what Moreida would have done, which is insufficient to plausibly allege an omission by Defendant Lessner that was material to the "fair probability" determination.

As to the Plaintiff's trip to Fort Wayne on September 10, 2016, the Plaintiff alleges:

> There was no further information that would demonstrate investigators here corroborate information to be part of criminal activity or that Plaintiff did go to such place and did remove a package from the vehicle, no video audio or photographs support any claim rather all evidence presented are word of mouth and inconsistent. Again this information is too inconclusive to assume any criminal activity took place or suspicion of any wrong doing.

*Id*. However, the fact that the Plaintiff "can point out additional things which could have been done but were not does not in any way detract from what was done." *Jones*, 208 F.3d at 607. This means that the Plaintiff has not alleged a plausible knowing, intentional, or reckless omission by Defendant Lessner because the Plaintiff only asserts that the investigators could

have presented video, audio, or photographic evidence. Also, the contention that the evidence presented was inconsistent is unsupported by factual allegations and thus is insufficient.

As to the events of October 28, 2016, the Plaintiff's argument, which is quoted in full above, essentially asserts that Defendant Lessner misrepresented facts and falsified the Plaintiff's association with Moreida by not including the fact that Defendant Lessner and Moreida had agreed to make the transaction a week earlier. *See* Pl. Resp. Br. 32, ECF No. 229. However, the Plaintiff does not explain why including the information about the prior agreement would have made a difference in the federal magistrate judge's decision that there was a fair probability that evidence that the Plaintiff was involved in an ongoing conspiracy with associates to distribute methamphetamine would be found at the Plaintiff's home. That in the Plaintiff's opinion the facts in the affidavit are too inconclusive or could result in alternative inferences does not plausibly allege a knowing, reckless, or intentional false statement or omission by Defendant Lessner that was material to that probable cause determination.

Accordingly, the Court finds that the Plaintiff has not plausibly alleged that, in providing information in the affidavit about the nexus, Defendant Lessner knowingly, intentionally, or with reckless disregard for the truth made a false statement material to the probable cause determination or intentionally or recklessly withheld material information.

8.    *Conclusion*

For the reasons set forth above, even giving the Plaintiff the benefit of  the new factual assertions he presents in his brief, Defendant Lessner is entitled to qualified immunity because the Plaintiff has not plausibly alleged that, in providing information in the affidavit with the application for the warrant of the search of the Plaintiff's home, Defendant Lessner knowingly, intentionally, or with reckless disregard for the truth made a false statement material to the probable cause determination or intentionally or recklessly withheld material information.

**C.      Fourth Amendment Violation Claim Against Defendant Lessner—Participation in Search**

The Plaintiff also alleges a claim against Defendant Lessner for violating the Fourth Amendment based on an unreasonable search stemming from his participation in the search of the Plaintiff's home. However, "[t]he search of a home for evidence of a crime is generally not unreasonable if it was conducted pursuant to a search warrant supported by probable cause." *United States v. Butler*, 71 F.3d 243, 248 (7th Cir. 1995). In this case, because the Plaintiff has not plausibly alleged that the warrant application for the search of his residence was not supported by probable cause, as set forth above, he has not plausibly alleged a claim for Fourth Amendment violation against Defendant Lessner based on his participation in the search of the Plaintiff's residence. Thus, the Court need not address the parties' additional arguments on the claim.

**D.      Fourth Amendment Violation Claim Against Defendants Bennett and Lerch—Warrantless Search of the Plaintiff's Business**

As stated above, the Court screened the Amended Complaint and granted the Plaintiff leave to proceed against Defendants Bayne Bennett and Kyle Lerch (ATF agents) in their individual capacities for compensatory and punitive damages for the Plaintiff's claim that they conducted a warrantless search of his business in violation of the Fourth Amendment. Apr. 6, 2023 Op. & Ord., ECF No. 141. However, in his response brief, the Plaintiff clarifies that the claim against Defendants Bennett and Lerch is for the search of his vehicles at his residence. *See* Pl. Resp. Br. 33, ECF No. 229. In the Amended Complaint, the Plaintiff did not allege that the vehicles were at the Plaintiff's residence. *See* Am. Compl., ECF No. 136. And the Plaintiff did not request leave to amend the Amended Complaint to add a claim against Defendants Bennett and Lerch for excessive or unnecessary destruction of the Plaintiff's vehicles at his residence in violation of the Fourth Amendment.

Even if he had, the contentions set forth in the Plaintiff's brief in response to the Defendants' Motion to Dismiss would be insufficient. This is because "[t]he general touchstone of reasonableness which governs Fourth Amendment analysis, governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (cleaned up). And "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979) (citations omitted). For example, "officers are entitled to open drawers and other containers and even cut open walls and cushions when searching for drugs." *Tate v. City of Chicago*, No. 19 C 7506, 2020 WL 6715660, at *8 (N.D. Ill. Nov. 16, 2020) (citing *Washington v. Godinez*, No. 95 C 7612, 1996 WL 599055, at *2 (N.D. Ill. Oct. 17, 1996)). Nevertheless, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *Ramirez*, 523 U.S. at 71; *see Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) ("[T]he Fourth and Fourteenth Amendments provide a remedy when a citizen's property is unreasonably damaged during a search." (citing *Ramirez*, 523 U.S. at 71; *Daniels v. Southfort*, 6 F.3d 482, 486 (7th Cir. 1993))). Thus, the question is whether the property damage "was necessary to execute the search." *Tate*, 2020 WL 6715660, at *8; *see Dalia*, 441 U.S. at 258.

In this case, the Plaintiff contends:

> Plaintiff brings his unreasonable search claim . . . against Lerch and Bennet for the unnecessary destruction of his property, a black Chevy Silverado (see Exhibit-27) and Yukon Denali parked outside his residence. Plaintiff brings his unreasonable search claim . . . against Lerch and Bennet for the unnecessary destruction of his property, a black Chevy Silverado (see Exhibit-27) and Yukon Denali parked outside his residence. The claim as to Lerch and Bennett is that they unreasonably destroyed his property and left without performing any repairs, in violation of the Fourth Amendment. After McCloughen presented a report describing Bennett and Lerch specifically searching the Denali and Bennett having searched the Silverado, Plaintiff filed his complaint against Defendants.

. . .

Here, it is noticeable that in exhibit-10 in the recorded conversation, an agent is heard stating the following:

- "I just tore the counsel out of that car, literally took the screws out and ripped it out" and found nothing (see exhibit-10, 2nd recording at 42:35-42:50,)
- "Do you think this is the load," "so there's a load supposed to be delivered here, to this address" "who leaves and is gone for 12 hours to go get their own truck" (see exhibit-10, 2nd recording at 43:22-47:35,)

This information can only conclude that those investigators were on a fishing expedition and in the midst of their expedition destroyed Plaintiff's vehicle.

. . .

Here, Agents not only broke apart interior and exterior parts of a truck belonging to Plaintiff, but caused further damage[] when they unloaded this vehicle from a flatbed tow truck.

Pl. Resp. Br. 33–34, ECF No. 229.

However, these contentions do not attribute any unreasonable conduct to Defendants Bennett and Lerch based on their own individual actions; instead, the conduct is attributed generally to "an agent," "investigators," or "Agents," which is insufficient. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983))). Also, the contention that the conduct of Defendants Bennett and Lerch was unreasonable is conclusory because it is unsupported by facts as to why their conduct—in the execution of the warrant for the search of the Plaintiff's home—went beyond what was necessary for the discovery of evidence that the Plaintiff was involved in an ongoing conspiracy with associates to distribute methamphetamine. Besides, even if the Court were to attribute to

Defendants Bennett and Lerch the tearing out of a console and breaking parts of the Plaintiff's truck, such conduct would not amount to unreasonable conduct in violation of the Fourth Amendment because the Defendants would have been searching for drugs hidden in the Plaintiff's vehicles that were at his residence and there is no indication that the damage to the Plaintiff's vehicles was unnecessary for that type of search.

Accordingly, the Court dismisses the claims against Defendants Bennett and Lerch for Fourth Amendment violations based on the warrantless search of the Plaintiff's business because, according to the Plaintiff, the vehicles were at his residence and the claim only pertains to the Plaintiff's business, the Plaintiff did not request leave to amend the Amended Complaint to add a claim against Defendants Bennett and Lerch for excessive or unnecessary destruction of the Plaintiff's vehicles at his residence, and even if he had, the contentions set forth in the Plaintiff's response would be insufficient for stating such a claim.[6]

### E.    Opportunity to Amend and Dismissal With Prejudice

The Defendants request dismissal with prejudice by which they mean the Court should not allow him to amend these claims. And the Plaintiff has not expressly requested an opportunity to amend to cure these deficiencies, nor has he identified how he would cure these deficiencies. District courts have "'broad discretion' to deny leave to amend, 'where there has been undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.'" *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). The Court finds that dismissal with prejudice of these claims is appropriate because the Plaintiff has not shown that he can state a plausible claim for relief against these Defendants. *See O'Boyle*

---

[6] Thus, the Court need not address the parties' other arguments on the "warrantless search of the Plaintiff's business" claim against Defendants Bennett and Lerch.

*v. Real Time Resolutions, Inc.*, 910 F.3d 338, 348 (7th Cir. 2018) (affirming dismissal and denial of motion to amend because none of the proposed theories "push[ed] the original claim into the realm of plausibility"); *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing.").

**F.    Fourth Amendment Claim Against Defendants Detective Stutsman, Randy Mockler, and Aaron Campbell—Warrantless for Search of the Plaintiff's Business**

In the April 6, 2023 screening order, the Court also granted the Plaintiff leave to proceed against Detective Stutsman, Randy Mockler, and Indiana State Police Officer Aaron Campbell for compensatory and punitive damages for the Plaintiff's claim that they conducted a warrantless search of the Plaintiff's business in violation of the Fourth Amendment. Op. & Ord., ECF No. 141. In the Amended Complaint, the Plaintiff alleges that the warrantless search of the Plaintiff's business took place on November 2, 2016. Am. Compl. ¶ 30, ECF No 136.

Although Defendants Stutsman, Mockler, and Campbell have not moved to dismiss that warrantless search claim, on August 14, 2023, Defendants Bennett and Lerch (along with Defendant Lessner who moved to dismiss the Fourth Amendment claim against him for falsifying the search warrant application) filed a Joint Motion to Dismiss [ECF No. 187], attaching an approved warrant application for the search of the Plaintiff's business dated November 1, 2016, and signed by the Honorable Teresa Cataldo, Elkhart Superior Court 3, Elkhart County, Indiana, Case No. 20D03-1611-MC-, which the Court attaches to this Order as Attachment A. *See* Att. A; Def. Att. 3, ECF No. 188-3. This document indicates that the search of the Plaintiff's business on November 2, 2016, was not warrantless, and thus appears to negate

46

the Plaintiff's Fourth Amendment claim based on a warrantless search of his business against Defendants Stutsman, Mockler, and Campbell. As a result, it appears that summary judgment should be entered in favor of Defendants Stutsman, Mockler, and Campbell and against the Plaintiff.

"A district judge is authorized to grant summary judgment to a party that has not requested it; [she] is not required to conduct a trial when there is no genuine issue of material fact, just because the parties . . . [did not] notice the absence of any triable issues." *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994) (citation omitted). "However, 'granting summary judgment sua sponte warrants special caution' and generally requires that the party against whom summary judgment is entered have notice and an opportunity to present its evidence." *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009) (citation omitted). Here, the Court cannot consider the warrant for the search of the Plaintiff's business to grant summary judgment in favor of Defendants Stutsman, Mockler, and Campbell and against the Plaintiff on the Plaintiff warrantless business search claim without giving the Plaintiff a reasonable opportunity to respond and an opportunity to present his evidence. Because the Plaintiff is proceeding without counsel, the Court will direct the Clerk of Court to provide the Plaintiff with a copy of Appendix C to the Local Rules for the Northern District of Indiana ("Notice to *Pro Se* Litigant").

Based on the foregoing, the Court will set a deadline in the Conclusion of this Opinion and Order for the Plaintiff to file a summary judgment response brief addressing why summary judgment should not be granted for Defendants Detective Stutsman, Randy Mockler, and Indiana State Police Officer Aaron Campbell on the claims for compensatory and punitive damages for conducting a warrantless search of the Plaintiff's business in violation of the Fourth Amendment in light of the evidence of a warrant for the search.

In the alternative, the Plaintiff may file a motion to voluntarily dismiss his Fourth Amendment claim for a warrantless search of his business against Defendants Detective Stutsman, Randy Mockler, and Indiana State Police Officer Aaron Campbell.

The Court will also set a deadline for Defendants Detective Stutsman, Randy Mockler, and Indiana State Police Officer Aaron Campbell to file a reply, if any, in support of summary judgment on the Fourth Amendment claim against them for a warrantless search of the Plaintiff's business.

### G. Conclusion

Accordingly, the Court grants the Defendants' Joint Motion to Dismiss [ECF No. 187], dismissing with prejudice the claims against Defendant Wayne Lessner in his individual capacity for compensatory and punitive damages for falsifying the search warrant application and participating in the search of the Plaintiff's home in violation of the Fourth Amendment and against Defendants Bayne Bennett and Kyle Lerch in their individual capacities for compensatory and punitive damages for the Plaintiff's claim that they conducted a warrantless search of his business in violation of the Fourth Amendment.

The Amended Complaint remains pending only against Defendants Lt. Steve Spadafora and Officer Sheldon Scott in their individual capacities for compensatory and punitive damages for the Plaintiff's claim that they participated in the search of his home and in his arrest in violation of the Fourth Amendment and against Detective Stutsman, Randy Mockler, Indiana State Police Officer Aaron Campbell for compensatory and punitive damages for the Plaintiff's claim that they conducted a warrantless search of the Plaintiff's business in violation of the Fourth Amendment.

Based on the dismissal of the Plaintiff's Fourth Amendment violation claim against Defendant Lessner for making false affidavit statements, the Court denies as moot the Plaintiff's

Motion to Stay the Proceedings for Leave to Take Deposition of Confidential Sources [ECF No. 355], and the Plaintiff's Motion for Subpoena(s) to Serve Discovery Request(s) Upon a Non-Party [ECF No. 367].

Additionally, the Court will set a deadline in the Conclusion of this Opinion and Order for the Plaintiff to file  a summary judgment response brief addressing why summary judgment should not be granted for Defendants Detective Stutsman, Randy Mockler, and Indiana State Police Officer Aaron Campbell on the claims for compensatory and punitive damages for conducting a warrantless search of the Plaintiff's business in violation of the Fourth Amendment in light of the evidence of a warrant for the search. In the alternative, the Plaintiff may file a motion to voluntarily dismiss his Fourth Amendment claim for a warrantless search of his business against Defendants Detective Stutsman, Randy Mockler, and Indiana State Police Officer Aaron Campbell.

The Court will also set a deadline for Defendants Detective Stutsman, Randy Mockler, and Indiana State Police Officer Aaron Campbell to file a reply, if any, in support of summary judgment on the Fourth Amendment claim against them for a warrantless search of the Plaintiff's business. And the Court will direct the Clerk Court of Court to send the Plaintiff a copy of Appendix C to the Local Rules for the Northern District of Indiana ("Notice to *Pro Se* Litigant") with this Opinion and Order.

## MOTION FOR LEAVE TO AMEND[7]

The Plaintiff seeks leave to amend his Amended Complaint to identify "South Bend Police Department SWAT Team, an unknown defendant who threw a flash-bang grenade in the

---

[7] On March 7, 2024, the Plaintiff filed a first Verified Motion to Add Bayne Bennett as the Unknown Defendant Who Threw a Flash Bang Device in the Presence of a Child [ECF No. 291], to which he attached Exhibits 1–4, *see* ECF No. 291-1. Defendant Bayne Bennett filed a response [ECF No. 309] on March 26, 2024, highlighting that the Plaintiff had not attached a proposed second amended complaint to

presence of a child." Am. Compl., p. 1, ECF No. 136. Specifically, the Plaintiff requests to identify the unknown defendant as Bayne Bennett. According to the Plaintiff, he just discovered Bennett's conduct through Defendant Spadafora's answer to an interrogatory. For the reasons set forth below, the Court denies the Plaintiff's request.

Generally, a motion for leave to amend a pleading is evaluated under Federal Rule of Civil Procedure 15(a)(2), as the Plaintiff suggests here. Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, the rule is in some tension with the rule that governs scheduling orders, Federal Rule of Civil Procedure 16." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). When the deadline for amendment set in the scheduling order has passed, Federal Rule of Civil Procedure 16(b)(4) "requires a party to modify the schedule before pursuing an amendment." *Sumrall v. LeSea, Inc.*, 104 F.4th 622, 630 (7th Cir. 2024). The party seeking amendment must first show "good cause for modifying the scheduling order" under Rule 16(b)(4) before the Court reaches the Rule 15 question. *Id.* (quoting *Alioto*, 561 F.3d at 720); *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) ("In this situation, the district court is entitled to apply the heightened good-cause standard of Rule16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied."); *see* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

---

his motion, and the Plaintiff filed a reply [ECF No. 328] on April 8, 2024. Also, on April 8, 2024, the Plaintiff filed a second Plaintiff's Verified Motion to Add Bayne Bennett as the Unknown Defendant Who Threw a Flash Bang Device in the Presence of a Child [ECF No. 329], which appears to be similar to the first motion except that attached is a proposed second amended complaint (but Exhibits 1–4 that were included with the Plaintiff's first motion are not attached). Given the Plaintiff's pro se status and in the interest of justice, the Court considers all the Exhibits included with the first motion, *see* Pl. Exs. 1–4, ECF No. 291-1, when considering the second motion.

**A.       Consideration of the Plaintiff's Proposed Amendment Under Rule 16(b)**

The heightened good cause standard articulated in Rule 16(b)(4) "primarily considers the

diligence of the party seeking amendment" to determine whether good cause has been

established. *Trustmark Ins. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005)

(citation omitted). Under Rule 16(b)(4), the burden to establish diligence is on the Plaintiff, as

the moving party. *Id*.

Here, the applicable scheduling order set the deadline for the amendment of pleadings for

January 17, 2023. *See* ECF Nos. 135, 243. The Plaintiff filed the instant Motion on March 7,

2024, and the proposed second amended complaint on April 8, 2024, over one year after the

deadline for amending pleadings expired. *See* ECF Nos. 291, 329. Consequently, the heightened

good cause standard applies.

The Plaintiff asserts that he discovered the identity of the unknown defendant when

Defendant Spadafora answered the Plaintiff's interrogatories (Interrogatory No. 3) on February

20, 2024, which he received on March 1, 2024. *See* Pl. Ex. 1, p. 2, ECF No. 291-1; Interr. No. 3,

ECF No. 269. Defendant Spadafora stated that he "did not witness a 'flash-bang grenade' device

being used, and to the best of his knowledge no such device was used. [He] did witness ATF

Officer Bayne Bennett deploy a low roll distraction device immediately inside the door of the

building." *See* Pl. Ex. 1, p. 2, ECF No. 291-1; Interr. No. 3, ECF No. 269.

The Plaintiff's position is that, prior to Defendant Spadafora's interrogatory response, he

had no idea that the search team was part of the SWAT team because Nicholas McGloughen

stated in his June 22, 2021 Affidavit that neither he nor his evidence team was present when the

SWAT team executed the search warrant and entered the Plaintiff's residence. *See* Pl. Ex. 4,

¶ 13, ECF No. 291-1. In a supplementary report on the search of the Plaintiff's residence,

McGloughen provided the last names of the members of the search team, which included

51

Bennett. *See* Pl. Ex. 3, ¶ 5, ECF No. 291-1. As a result, the Plaintiff states that he did not

question the members of the search team earlier because he did not think they were part of the

SWAT team based on McGloughen's representations. Also, Defendant Bennett does not object

nor does he identify any prejudice from being identified as the unknown defendant who threw a

flash-bang grenade in the presence of a child.[8] Accordingly, the Court finds that the Plaintiff has

met his burden to demonstrate good cause for amending the pleadings after the deadline set forth

in the applicable scheduling order.

**B.      Consideration of the Plaintiff's Proposed Amendment Under Rule 15(a)**

Rule 15(a) provides that a court "should freely give leave [to amend pleadings] when

justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, a court should not grant leave to

amend "where the amendment would be futile." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir.

2011) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). The Court finds that

amendment would be futile for the reasons set forth below.

Here, the Plaintiff requests leave to amend his Amended Complaint to identify Bayne

Bennett as the unknown defendant who threw a flash-bang grenade in the presence of a child.

The corresponding allegations related to Bennett throwing a flash-bang grenade in the proposed

second amended complaint are:

> On November 2, 2016 at approximately 6 A.M. the SWAT Team received
> the command to approach and enter the residence. The SWAT Team, which
> included Bennett, Scott and Lieutenant Spadafora who approved and supervised
> Sheldon B. Scott to Authorized and guide the South Bend SWAT Team Unit to
> execute in a military-style assault ("Dynamic Entry") a search warrant at plaintiff's
> home (71395 Country Road 25 New Paris, IN.), traveled down the road toward the
> residence, from a church that was about a quarter of a mile down the road from the
> residence. About two minutes after the SWAT Team left the church, a helicopter in
> the distance turned on its spotlight, illuminating the residence while SWAT officer

---

[8] On March 6, 2024, Defendant Bennett filed a response [ECF No. 309] to the Plaintiff's first Verified
Motion to Add Bayne Bennett as the Unknown Defendant Who Threw a Flash Bang Device in the
Presence of a Child.

forcefully gained entry without a "knock or announce" violently breaking out windows, bashing in the front door and Bayne Bennett blindly throwing a flash-bang grenade in the presence of a child causing injury. . . .

The Officers here, broke out a fairly large picture window and in their own words, they "raked out the windows", at that point it was obvious the entire living room area was exposed, since the curtains did not completely cover the picture window. Sadly, on the other side of that large picture window, laid a small one year child asleep while those officers decided to throw a flash-bang grenade in her direction. The plaintiff suffered injury to his upper right arm and was struck with the butt end of a riffle after he was hand cuffed (zip-tied). R. O. R. suffered hearing trauma and has had complication with a cough (asthma like symptoms) as well as trauma directly from excessive force by the South Bend SWAT Team. R. O. R. was not observed by SWAT Officers or by anyone who had authority rather Plaintiff's Mother arrived shortly after and took her to her residence not knowing what actually took place since officers there at the scene did not allow R. O. R.'s mother communicate too much with her Grandmother. Thereafter, the Grandmother cared for R. O. R. witnessing many difficulties with her wellbeing and having her at frequent health check-ups.

Proposed Sec. Amend. Compl., ¶¶ 26–27, ECF No. 329-1 (cleaned up).

Based on these proposed allegations, the Court finds that it would be futile for the Plaintiff to identify Bennett as the unknown defendant who threw a flash-bang grenade in the presence of a child because the corresponding claim against Bennett is based only on injuries from the flash-bang grenade incurred by the child—whom the Plaintiff identifies as his daughter R.O.R.—including her suffering hearing trauma, a cough, and trauma from excessive force. On similar allegations, this Court has previously ruled, and the Seventh Circuit Court of Appeals affirmed, that the Plaintiff may not add his daughter as a plaintiff in this case. *See* Dec. 12, 2022 Op. & Ord. 4, ECF No. 135 ("As this Court already ruled and as affirmed by the Court of Appeals, Mr. Rodriguez may not add his daughter as a plaintiff." (citing *Rodriguez*, 2022 WL 4534787, at *3)); *Rodriguez*, 2022 WL 4534787, at *3 ("Rodriguez next continues his efforts to make his daughter a plaintiff, but the district court did not abuse its discretion by not permitting him to join his daughter or not recruiting counsel for her." (citing *Cook County v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022))). There is nothing in the proposed allegations nor the Plaintiff's

Motion that would prompt the Court to apply different reasoning than applied in the prior rulings on the issue of adding the Plaintiff's daughter as a plaintiff in this case.

**C.    Conclusion**

Accordingly, the Court denies the Plaintiff's request for leave to file a second amended complaint to identify Bayne Bennett as the unknown defendant who threw a flash-bang grenade in the presence of a child.

## CONCLUSION

Based on the foregoing, the Court hereby:

(1) LIFTS the stay of these proceedings. The Court sets a deadline of **September 22, 2025**, for the Defendants to file a response, if any, to the motions filed while this case was stayed, *see* ECF Nos. 401, 404, 405, 409, 410, 411, 412, 414, 416, 423. The Court sets a deadline of **October 20, 2025**, for the movant (the Plaintiff, Maria Rodriguez, or R.R.) of each motion at ECF Nos. 401, 404, 405, 409, 410, 411, 412, 414, 416, 423, to file a reply, if any;

(2) OVERRULES the Plaintiff's objections in the Plaintiff's Motion to Object to Magistrate's Opinion and Order of Dkt. 194 [ECF No. 200];

(3) GRANTS the Joint Motion to Dismiss [ECF No. 187] by Defendants Kyle Lerch, Wayne Lessner, and Bayne Bennett, dismissing with prejudice the claims (a) against Defendant Wayne Lessner in his individual capacity for compensatory and punitive damages for falsifying the search warrant application and participating in the search of the Plaintiff's home in violation of the Fourth Amendment and (b) against Defendants Bayne Bennett and Kyle Lerch in their individual capacities for compensatory and punitive damages for the Plaintiff's claim that they conducted a warrantless search of his business in violation of the Fourth Amendment;

(4) NOTES that the Amended Complaint remains pending only (a) against Defendants Lt. Steve Spadafora and Officer Sheldon Scott in their individual capacities for compensatory and punitive damages for the Plaintiff's claim that they participated in the search of his home and in his arrest in violation of the Fourth Amendment and (b) against Detective Stutsman, Randy Mockler, Indiana State Police Officer Aaron Campbell for compensatory and punitive damages for the Plaintiff's claim that they conducted a warrantless search of the Plaintiff's business in violation of the Fourth Amendment;

(5) DIRECTS the Clerk of Court to attach to this Order Attachment A, which is a copy of the warrant issued on November 1, 2016, for the search of the Plaintiff's business;

(6) ORDERS the Plaintiff to FILE by **September 22, 2025**, a summary judgment response brief addressing why summary judgment should not be granted for Defendants Detective Stutsman, Randy Mockler, and Indiana State Police Officer Aaron Campbell on the claims for compensatory and punitive damages for conducting a warrantless search of the Plaintiff's business in violation of the Fourth Amendment in light of the evidence of a warrant for the search. In the alternative, by that deadline, the Plaintiff may file a motion to voluntarily dismiss his Fourth Amendment claim for a warrantless search of his business against Defendants Detective Stutsman, Randy Mockler, and Aaron Campbell;

(7) ORDERS that the deadline for Defendants Detective Stutsman, Randy Mockler, and Indiana State Police Officer Aaron Campbell to file a reply, if any, in support of summary judgment on the Fourth Amendment claim against them for a warrantless search of the Plaintiff's business is **October 6, 2025**;

(8) DIRECTS the Clerk Court of Court to send the Plaintiff a copy of Appendix C to the Local Rules for the Northern District of Indiana ("Notice to Pro Se Litigant") with this Opinion and Order;

(9) CAUTIONS the Plaintiff that if he does not file a summary judgment response brief with an explanation by the deadline, the warrantless search claim is subject to dismissal;

(10) DENIES as moot the Plaintiff's Motion to Stay the Proceedings for Leave to Take Deposition of Confidential Sources [ECF No. 355], and the Plaintiff's Motion for Subpoena(s) to Serve Discovery Request(s) Upon a Non-Party [ECF No. 367];

(11) DENIES as moot the Plaintiff's first Verified Motion to Add Bayne Bennett as the Unknown Defendant Who Threw a Flash Bang Device in the Presence of a Child [ECF No. 291]; and

(12) DENIES the Plaintiff's second Verified Motion to Add Bayne Bennett as the Unknown Defendant Who Threw a Flash Bang Device in the Presence of a Child [ECF No. 329].

SO ORDERED on August 25, 2025.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT